SNYDER, *Appellant/Cross-Respondent,*
*v.*
NELSON, *Defendant,*
LEATHERBY INSURANCE COMPANY,
*Respondent/Cross-Appellant.*
(No. 397-214, SC 24697)

564 P2d 681

Ray G. Brown, Portland, argued the cause and filed briefs for appellant/cross-respondent.

William L. Hallmark, Portland, argued the cause for respondent/cross-appellant. With him on the briefs were William R. Miller, Jr., and Jones, Lang, Klein, Wolf & Smith, Portland.

HOLMAN, J.

## HOLMAN, J.

This is a garnishment proceeding. Plaintiff, judgment creditor of defendant Nelson, sought to garnish the proceeds of an automobile liability insurance policy issued to Nelson by Leatherby Insurance Company (garnishee). Garnishee answered that it had no proceeds which were owing under the policy. After filing allegations and interrogatories which garnishee answered, plaintiff filed a motion for summary judgment. The motion was granted by the trial court, but because of the limited extent of the relief granted, plaintiff appeals. Garnishee cross-appeals, contending that a question of fact exists as to its coverage of Nelson and that no summary judgment should therefore have been granted.

The issue in this proceeding is the extent of the liability insurance coverage under the policy which garnishee issued to Nelson. In her deposition, which is part of the record, plaintiff discloses that her judgment against Nelson arose out of an encounter with Nelson in a bar. She and a female friend were in the bar when Nelson asked plaintiff to dance and plaintiff refused. Nelson cursed plaintiff, and either Nelson or his companion poured a drink down the front of plaintiff's clothing. Plaintiff and her friend went to plaintiff's vehicle in the bar parking lot and drove off. They were followed by Nelson and his companion in Nelson's car. While plaintiff was traveling at 30 to 35 miles per hour, Nelson used his car to bump the rear of plaintiff's vehicle. Plaintiff speeded up to 50 to 55 miles per hour, whereupon Nelson did the same, again bumping plaintiff's vehicle, but this time also pushing it over a sidewalk and through a fence.

Plaintiff brought an action against Nelson based on negligence. Garnishee refused to defend, claiming there was no coverage for the intentional acts of

Nelson.[1] A default judgment was taken by plaintiff against Nelson for $3,000 for personal injuries, $100 for damage to her vehicle, $288 for car rental while her vehicle was being repaired, and $2,500 for punitive damages. Plaintiff then began the present garnishment proceeding against garnishee to satisfy her judgment out of the proceeds of Nelson's policy.[2] Plaintiff's motion for summary judgment against garnishee was allowed by the trial court to the extent of plaintiff's actual damages. Plaintiff appeals, contending the trial court erred in not allowing recovery from garnishee of that part of her judgment which was for punitive damages. Garnishee cross-appeals, claiming that the granting of summary judgment was error because a question of fact exists concerning whether there was coverage for plaintiff's injuries and damages resulting from the intentional acts of Nelson in bumping plaintiff's vehicle.

We shall first take up garnishee's cross-appeal, because if the granting of summary judgment was improper due to the existence of a question of fact concerning whether there was any coverage at all, resolution of plaintiff's contention concerning the coverage of punitive damages is premature and may never be required.[3]

---

[1] Garnishee was, in fact, required by its policy to defend Nelson because its duty to defend was delineated by the allegations of the complaint against Nelson and not by what garnishee may have known of the occurrence independent of the allegations of that complaint. However, plaintiff is not, in this proceeding, attempting to assert against garnishee any right acquired from Nelson which Nelson may have against garnishee arising out of its failure to defend him.

[2] ORS 23.230:

"Proceeds of casualty and indemnity insurance attachable on execution. Whenever a judgment debtor has a policy of insurance covering liability, or indemnity for any injury or damage to person or property, which injury or damage constituted the cause of action in which the judgment was rendered, the amount covered by the policy of insurance shall be subject to attachment upon the execution issued upon the judgment."

[3] The judgment order of the trial court in this proceeding recites that "plaintiff * * * further conceded that defendant is not estopped by prior

■■ Garnishee's answer to plaintiff's allegations in the garnishment proceeding affirmatively alleges that the acts giving rise to Nelson's liability to plaintiff were his intentional rammings of plaintiff's automobile and that the policy of insurance issued to Nelson did not insure against "intentional acts." Garnishee's position, if interpreted literally, is, of course, not well taken. What garnishee really contends, however, as is shown by its memorandum of law filed with the trial court, is that the policy does not cover intentionally inflicted *injuries or damages.* Most, if not all, negligently inflicted injuries or damages result from intentional acts of some kind, but coverage still exists under normal policy provisions if there was no intention to cause, by the commission of the acts, the resulting injuries or damages. Although the policy provisions involved are somewhat different from those under consideration in *City of Burns v. Northwestern Mutual,* 248 Or 364, 369, 434 P2d 465 (1967), the following language from that case is appropriate here:

"* * * The policy exclusion relates to *injury* caused intentionally. It is not sufficient that the insured's intentional, albeit wrongful, act has resulted in unintended harm; it is the harm itself that must be intended before the exclusion will apply. An act may be so certain to cause a particular kind of harm that it can be said that a person who did such an act intended the harm. * * *." (Emphasis in original.)

■ The policy language in the present case obligates garnishee "to pay upon behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, * * * *caused by accident* and arising out of the

civil and criminal judgments to raise the issue that defendant's conduct was intentional." This being so, it is unnecessary for us to decide whether garnishee is, by reason of its refusal to defend the action against Nelson based upon negligence, foreclosed in this proceeding by the judgment against its insured of any right it may have to contend the injury to plaintiff was intentionally inflicted. *C.f. Ferguson v. Birmingham Fire Ins.,* 254 Or 496, 460 P2d 342 (1969).

* * * use of the automobile." (Emphasis ours.) There is a similar provision concerning damage to property. Thus, the policy by its terms does not cover intentionally inflicted injuries or damages. In any event, under usual circumstances it is against public policy for a tortfeasor to insure against liability for intentionally inflicted injury or damage. *Isenhart v. General Casualty Co.,* 233 Or 49, 377 P2d 26 (1962).

■■  The policy issued by garnishee was one provided for by the Financial Responsibility Law, ORS 486.011 *et. seq.* It is plaintiff's contention that the legislature intended that such a policy, unlike the ordinary policy involved in *Isenhart,* should cover intentionally inflicted injuries and damages because the thrust of the statutory enactment is to increase the protection of injured persons. ORS 486.541 of the Law provides:

> "Every vehicle liability policy for which a certificate of insurance is given to prove future responsibility shall * * * contain an agreement or indorsement which provides that the insurance is provided thereunder in accordance with the coverage defined in this chapter as respects bodily injury and death or property damage, or both, and is subject to all the provisions of this chapter."

If the Financial Responsibility Law intended coverage for intentionally inflicted injuries and damages, garnishee's policy would automatically provide such coverage, regardless of its terms. We must therefore look at the Law for an indication of legislative intent on this issue. ORS 486.011(7) provides:

> " 'Future responsibility' means the ability to respond in damages for liability, *on account of accidents* occurring subsequent to the effective date of the proof thereof arising out of the ownership, operation, maintenance or use of a vehicle * * *.
> "* * * * *." (Emphasis added.)

Plaintiff points to no particular part of the Law as indicating that a policy issued pursuant to it provides coverage for intentionally inflicted injuries and damages. The thrust of the Law apparently is to make certain that an insured has coverage of normal scope

which cannot be voided subsequent to an accident by the insured's own statements or lack of cooperation. It is, therefore, our conclusion that the Financial Responsibility Law was not intended to require coverage for intentionally inflicted personal injuries or property damages.

Plaintiff cites *Hartford Accident & Indemnity Co. v. Wolbarst,* 95 NH 40, 57 A2d 151 (1948), in support of her position that policies issued under a financial responsibility law cover intentionally inflicted injuries and damages because the concern of the law is compensation for injured parties. Although the *Wolbarst* case appears to so hold, we do not choose to follow it, because its reasoning does not seem to be sound and also because there is another basis upon which the New Hampshire court could have based its decision. In *Wolbarst* there was a finding of fact that although the insured had intended to bump the rear of the vehicle in which the parties who were injured were riding, he had not intended thereby to inflict injuries upon them.

Plaintiff also cites *Davis v. State Farm Mut. Ins.,* 264 Or 547, 507 P2d 9 (1973). In *Davis* it was held that there was no public policy which prevented an insured plaintiff from collecting from *his own* insurer under *uninsured motorist coverage* when he had been injured by a third party who had no coverage because he had intentionally injured the insured plaintiff. We held that there is no public policy against such coverage because the wrongdoer is not being protected thereby from the consequences of his intentional infliction of the injuries. The insured was merely insuring himself against (among other things) the possibility of being intentionally injured by an uninsured motorist.

■ It is garnishee's position that from Nelson's intentional rammings of plaintiff's car it is possible for the trier of the facts to infer that Nelson intended the normal and natural results of his actions and thus to find that Nelson intentionally injured plaintiff and damaged her vehicle. We agree with garnishee that

this is a permissible but not necessary inference to draw from Nelson's actions and that there is a legitimate question of fact as to whether Nelson intended the injuries and damage. Summary judgment should therefore not have been granted, as such judgment is inappropriate where a legitimate question of fact exists. ORS 18.105(3); *Forest Grove Brick v. Strickland,* 277 Or 81, 84-85, 559 P2d 502 (1977).

Because we cannot tell at this time whether there is any coverage at all, the issue of whether punitive damages are covered by the terms of the policy as written or by the requirements of the Financial Responsibility Law is not ripe for decision, and we therefore do not consider the merits of the issue raised by plaintiff's appeal.

The judgment of the trial court is reversed and the matter is remanded for further proceedings in conformance with this opinion.