Argued and submitted December 5, 1986, reversed and remanded June 24,
reconsideration denied August 21, petition for review denied
September 15, 1987 (304 Or 150)

## STATE FARM MUTUAL
## AUTOMOBILE INSURANCE COMPANY,
*Respondent,*

*v.*

## STEWARD,
*Defendant,*
## TIFFANY et al,
*Appellants.*

(C84-8-122; CA A38640)

738 P2d 996

Garrison F. Turner, Medford, argued the cause for appellants. With him on the briefs was Frohnmayer, Deatherage, deSchweinitz, Pratt & Jamieson, P.C., Medford.

Kent W. Day, Coos Bay, argued the cause for respondent. With him on the brief was Ormsbee & Corrigall, Coos Bay.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

### NEWMAN, J.

Defendant Alex Tiffany[1] appeals a summary judgment for plaintiff in its action for a declaration that it has no duty to defend or indemnify defendant Steward against liability claims arising out of an automobile collision. We reverse.

The facts are undisputed. On April 14, 1984, vehicles that Steward and Alma Tiffany operated collided. The Tiffany children, Chrystle and Cherish, were passengers in their mother Alma's vehicle. Alma was killed, and the children were injured.[2] Steward was intoxicated when the collision occurred. The state charged Steward with first degree manslaughter for Alma's death and first degree assault for each of the children's injuries. The criminal cases were consolidated for trial. The jury returned verdicts of guilty of second degree manslaughter and second degree assault. Steward did not appeal the convictions.

Steward's insurance policy provided that plaintiff would:

"Pay damages which an insured becomes legally liable to pay because of: (a) bodily injury to others, and (b) damage to or destruction of property including loss of its use, *caused by*

---

[1] Defendant Steward is not a party to this appeal. Alex Tiffany was Alma's husband and is the father of their children, Cherish and Chrystle. He is named as a defendant individually and as guardian of the children.

[2] There are few facts in the record about the accident. The portion of the transcript of the criminal proceedings that plaintiff introduced in evidence contains only Steward's testimony and the trial court's instructions to the jury. Plaintiff also submitted the affidavit of the deputy district attorney who prosecuted the criminal case, but it does little more than reiterate the jury instructions. The trial court's memorandum opinion in plaintiff's action states in part that

"[t]o understand what the jury determined it is necessary to understand Mr. Steward's position and the state's position in the criminal case. Mr. Steward indicated that he had consumed alcohol, was somewhat concerned about a police officer possibly stopping him and had formed the plan to go back to the scene of an earlier outdoor party to make sure a campfire was out. He indicated he turned north on Highway 101, went into some kind of daze and the collision occurred. The State contended that Mr. Steward was very upset, decided to commit suicide and elected to do that by crashing his vehicle into another and that the scenario is what made up the events causing the collision."

We do not know on what the court based its statement. There is nothing in this record concerning the state's or Steward's "position" in the criminal proceedings, and there is no evidence that Steward decided to commit suicide by "crashing his vehicle into another."

*accident* resulting from the ownership, maintenance, use of your car." (Emphasis in original.)

Plaintiff asserts that the verdicts collaterally estop defendants from contending that the injuries were "caused by accident" and that, therefore, its policy does not provide coverage. Defendant responds that the verdicts do not determine that Steward's wrongful conduct was intentional as to the victims. Because collateral estoppel requires an identity of issues,[3] he asserts that there is a genuine issue of material fact whether the injuries were "caused by accident."

In *Snyder v. Nelson/Leatherby Ins.*, 278 Or 409, 564 P2d 681 (1977), the plaintiff sought to garnish the proceeds of an automobile liability policy after she had obtained a default judgment in her negligence action against the insured. After the plaintiff had encountered the insured in a bar, she drove away and the insured followed her in his vehicle. He bumped the rear of her vehicle and caused it to crash. The garnishee-insurer's policy obligated it to pay for injuries or damages "*caused by accident* and arising out of the * * * use of the automobile." 278 Or at 413. (Emphasis in original.) It denied coverage on the ground that plaintiff's injuries and damages had been intentionally inflicted. The court stated:

> "Although the policy provisions involved are somewhat different from those under consideration in *City of Burns v. Northwestern Mutual*, 248 Or 364, 369, 434 P2d 465 (1967), the following language from that case is appropriate here:
>
> " '* * * The policy exclusion relates to *injury* caused intentionally. It is not sufficient that the insured's intentional, albeit wrongful, act has resulted in unintended harm; it is the harm itself that must be intended before the exclusion will apply. An act may be so certain to cause a particular kind of harm that it can be said that a person who did such an act intended the harm. (Emphasis in original.)'
>
> "* * * * *
>
> "It is garnishee's position that from Nelson's intentional rammings of plaintiff's car it is possible for the trier of the facts to infer that Nelson intended the normal and natural results of his actions and thus to find that Nelson intentionally injured plaintiff and damaged her vehicle. We agree

---

[3] Defendants concede that the other elements of collateral estoppel are present. *See State Farm Fire & Cas. v. Reuter*, 299 Or 155, 700 P2d 236 (1985).

with garnishee that this is a permissible but not necessary inference to draw from Nelson's actions and that there is a legitimate question of fact as to whether Nelson intended the injuries and damage. Summary judgment should therefore not have been granted, as such judgment is inappropriate where a legitimate question of fact exists." 278 Or at 413, 415. (Citations omitted.)

The policy language here is identical to that in *Snyder.* As we read *Snyder,* unless the criminal verdicts determined that Steward intended to cause the injuries to the Tiffanys, there is a genuine issue of material fact whether the injuries "were caused by accident."

The verdict of guilty of second degree manslaughter does not establish that Steward intended to injure Alma.[4] The court instructed the jury in the criminal case:

"A person commits manslaughter in the first degree if he causes the death of another human being recklessly under the circumstances manifesting an extreme indifference to the value of human life.

"* * * * *

"A person commits manslaughter in the second degree when he recklessly causes the death of another human being.

"* * * * *

"Recklessly means that a person was aware of and consciously disregarded a substantial and unjustifiable risk that death would occur. The risk must be of such nature and degree that disregard thereof constitutes a degree of deviation from the standard of care that a reasonable person would observe in the situation."

The jury must have concluded, in accordance with the instructions, that Steward *recklessly,* rather than intentionally, caused Alma's death.

The court also instructed the jury on assault:

"A person commits the crime of assault in the first degree

---

[4] Neither party cites ORS 43.160:

"That only is determined by a former judgment, decree or order which appears upon its face to have been so determined or which was actually and necessarily included therein or necessary thereto."

Both parties appear to agree, however, that we should look to the jury instructions and verdicts to see what was determined by the judgments.

if he causes serious physical injury to another by means of a dangerous weapon.

"* * * * *

" 'Intentionally' means that a person acts with a conscious objective to cause a result or to engage in the conduct described.

"* * * * *

"A person commits the crime of assault in the second degree if he knowingly causes physical injury to another by use of a dangerous weapon.

"In order to establish assault in the second degree it is necessary for the State to prove beyond a reasonable doubt each of the material elements of the crime as follows:

"* * * * *

"Third, that the defendant knowingly caused physical injury to Cherish Fay Tiffany and in the other case, Chrystle Love Tiffany by means of a dangerous weapon.

"These definitions apply:

" 'Knowingly' means that a person acts with an awareness that his conduct is of a nature so described or that a circumstance so described exists."

The jury found Steward guilty of second degree assault only. It did not find him guilty of first degree assault, which would have required that it find that he intentionally caused physical injury to the children.[5] Moreover, the court emphasized the

---

[5] Plaintiff argues that, under *State Farm Fire & Cas. v. Reuter, supra,* Steward's convictions for knowingly committing the assaults necessarily mean that he intended to injure the children. In *Reuter,* the insured was convicted of rape in the first degree. The indictment charged that he "did unlawfully and knowingly, by forcible compulsion, engage in sexual intercourse with [the victim]." 299 Or at 157. The victim brought a damage action against the insured. State Farm sued for a declaration of its obligations under a liability policy it had issued to the insured. The policy contained this exclusion:

"This policy does not apply * * * to bodily injury or property damage which is either expected or intended from the standpoint of the insured * * *."

The court stated:

"The question then becomes: Is an attack that was 'knowingly' committed 'expected or intended from the standpoint of the insured'? The Court of Appeals held that the exclusion was applicable because '[a]n attack that was "knowingly" committed must be, under the policy "either expected or intended from the standpoint of the insured." ' 68 Or App at 20, 680 P2d at 1001-02. [The defendant] has not sought review of this holding. Therefore, for the purposes of this appeal, we will consider a conviction of knowingly committing first degree rape neces-

distinction between intentional and knowing conduct when it instructed the jury that the defense of mental disease or defect was only available on the charges of first degree assault, "because they are the only offenses charged or for your consideration of which intent is a material element."[6]

■ ■ The verdicts in the criminal cases do not establish that Steward intended the injuries to the Tiffanys. They do not collaterally estop defendant from contending that the injuries were not intentional. There is, therefore, a genuine issue of material fact whether the injuries were intentional and, therefore, "caused by accident." The court erred when it granted summary judgment.

Reversed and remanded.

---

sarily to mean that the rapist either expects or intends to injure the victim. With that assumption coverage is excluded under the instant policy." 299 Or at 159. (Footnotes omitted.)

Contrary to plaintiff's assertion, the court did not decide that a conviction for a crime that is knowingly committed establishes that the injury to the victim was intentionally inflicted.

[6] ORS 161.085 provides, in part:

"(7) 'Intentionally' or 'with intent,' when used with respect to a result or to conduct described by a statute defining the offense, means that a person acts with a conscious objective to cause the result or to engage in the conduct so described.

"(8) 'Knowingly' or 'with knowledge,' when used with respect to conduct or to a circumstance described by a statute defining an offense, means that a person acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists."