2004 UT 69

**Ted John SPEROS and West American Insurance Company, Plaintiffs and Appellants,**

v.

**Kimberly Kay FRICKE, Jeffrey B. Hiatt, and Nationwide Mutual Insurance Company, Defendants and Appellees.**

No. 20020131.

Supreme Court of Utah.

Aug. 20, 2004.

Trent J. Waddoups, Salt Lake City, for plaintiffs.

Barbara L. Maw, Salt Lake City, for defendants.

PARRISH, Justice:

¶ 1 When the passenger of a Jeep Wrangler unexpectedly grabbed and turned the steering wheel, the Jeep collided with a Honda Civic and injured its driver. The insurer of the Honda filed suit against the liability insurer of the Jeep, seeking reimbursement of its payments to its insured. The trial court granted summary judgment to the Jeep's liability insurer, and the Honda's insurer appealed. We affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

¶ 2 In the early morning hours of January 1, 1998, Jeffrey Hiatt was a passenger in a Jeep Wrangler owned and driven by Kimberly Fricke and insured by Nationwide Mutual Insurance Company ("Nationwide"). Fricke had agreed to drive Hiatt home from a nightclub. After Hiatt asked Fricke to take him to her home instead, the two argued. Shortly after passing the road to Fricke's home, Hiatt suddenly and without warning reached over and grabbed the Jeep's steering wheel. As a result, the Jeep veered into oncoming traffic and crashed into a Honda Civic driven by Ted Speros, injuring him.

¶ 3 West American Insurance Company ("West American") insured Speros. West American compensated Speros for his injuries and property damage and then demanded reimbursement from Nationwide under an asserted right of subrogation. Having decided that Fricke was not negligent and that its policy with Fricke did not extend coverage to Hiatt when he grabbed and turned the steering wheel of Fricke's Jeep, Nationwide refused West American's demand. Speros and West American then sued Hiatt, Fricke, and Nationwide.[1]

¶ 4 Nationwide defended the claims against itself and Fricke, but refused to defend Hiatt, and West American was able to obtain a default judgment against him. The issue of Nationwide's liability for Hiatt's actions under its policy with Fricke was decided by the trial court on cross-motions for summary judgment. The trial court granted summary judgment to Nationwide, holding that West American lacked standing to proceed directly against Nationwide. Alternatively, the trial court held that Nationwide was entitled to make a determination that Hiatt was not covered by its policy, that Nationwide did not owe Hiatt a duty to defend, and that Nationwide therefore was not liable to West American for the default judgment entered against Hiatt.

¶ 5 West American also sought reimbursement from Nationwide based on Fricke's alleged negligence. The trial court granted summary judgment to Fricke on this question, holding that there was no factual basis on which a jury could find Fricke negligent. In a written order filed on January 15, 2002, the trial court dismissed with prejudice all claims against Fricke. Then, after noting that the claims against Fricke presented the "sole and remaining issue to be decided," the order also dismissed with prejudice "[p]laintiff's [c]omplaint and all claims contained therein."

¶ 6 West American appealed. Its notice of appeal, however, erroneously identified the trial court's final judgment as having been entered on January 11, 2002, rather than on January 15, 2002. Because of this error, Nationwide maintains that the entire appeal is defective and should be dismissed.

¶ 7 We affirm in part, reverse in part, and remand. With respect to the validity of the

---

1. Although West American is the real party in interest, the complaint also identifies Speros, West American's insured, as a plaintiff and alleg-es that West American is subrogated to Speros' claims against Hiatt, Fricke, and Nationwide.

notice of appeal, we hold that West American's notice was sufficient to invoke our jurisdiction to consider all of the issues raised on appeal. With respect to the summary judgment entered in favor of Nationwide and Fricke on the question of Fricke's negligence, we affirm the trial court.

¶ 8 The question of Nationwide's obligation to reimburse West American for the payments it made to Speros based on the actions of Hiatt presents two discrete issues. The first is whether West American is entitled to reimbursement from Nationwide for the Personal Injury Protection ("PIP") payments it made to Speros. We affirm the trial court's conclusion that West American lacks standing to seek recovery of these payments because an insurer's claim for reimbursement of PIP payments is subject to mandatory arbitration under section 31A–22–309(6) of the Utah Code.

¶ 9 The second issue is whether West American is entitled to reimbursement from Nationwide for the other payments it made to Speros. Under Utah Code section 31A–22–201, an injured party has a direct right of action against the insurer of a tortfeasor if the injured party obtains and is unable to successfully execute on a judgment against the tortfeasor himself. Under the doctrine of equitable subrogation, the insurer of the injured party inherits this right of action. Accordingly, Nationwide is liable to West American based on West American's judgment against Hiatt if West American can establish that (1) Hiatt was insured under the Nationwide policy and (2) West American obtained, but was unable to execute on, a judgment against Hiatt.

¶ 10 With respect to Hiatt's status as an insured under Fricke's policy with Nationwide, we hold that the policy covered Hiatt because he was a "permissive user" and because the "intentional acts" exclusion contained in the policy is enforceable only with respect to policy amounts in excess of the minimum statutory requirements. Because Hiatt was covered under the Nationwide policy and because Nationwide breached its duty to defend Hiatt in the lawsuit filed by West American, Nationwide is not free to relitigate the issue of Hiatt's liability.

¶ 11 With respect to the issue of whether West American obtained but was unable to satisfy a judgment against Hiatt, the record reflects that West American obtained a default judgment against Hiatt. It does not, however, reflect whether West American unsuccessfully attempted to execute on the judgment. We therefore remand to the trial court for a determination as to this issue.

## ANALYSIS

### I. THE NOTICE OF APPEAL

■ ¶ 12 We first address Nationwide's argument that West American's notice of appeal was defective. Rule 3(d) of the Utah Rules of Appellate Procedure provides that a notice of appeal "shall designate the judgment or order, or part thereof, appealed from." Accordingly, we review the notice of appeal to determine whether it adequately designated the judgment appealed from.

¶ 13 The trial court entered orders on May 16, 2000, and on August 16, 2001, adjudicating the coverage issues relating to Hiatt and the issue of Nationwide's liability for the default judgment entered against him. On January 15, 2002, the trial court entered its final order adjudicating the issue of Fricke's alleged negligence and dismissing plaintiffs' "[c]omplaint and all claims contained therein with prejudice."

¶ 14 Nationwide argues that because West American's notice of appeal referred to a non-existent order of January 11, 2002, the notice of appeal failed to "designate the judgment or order, or part thereof, appealed from." According to Nationwide, West American's error strips this court of jurisdiction to consider its appeal. Alternatively, Nationwide argues that West American's appeal should be limited to the issue of Fricke's negligence, which was disposed of in the January 15, 2002 order entered just four days after the erroneous date specified in the notice of appeal.

¶ 15 We are unpersuaded by Nationwide's arguments. When the notice of appeal is considered in context, it becomes evident that the reference to the "Order of January 11, 2002, in which the court granted the

Defendant's motion for summary judgment" was intended to refer to the order of January 15, 2002, which did, in fact, grant Fricke's motion for summary judgment. We therefore reject Nationwide's claim that West American failed to give adequate notice of its intent to appeal the January 15 order.

¶ 16 We next consider Nationwide's argument that West American's erroneous reference to a January 11 order is insufficient to confer jurisdiction over the issues relating to Nationwide's liability for Hiatt's actions, which were first addressed by the trial court in its orders entered on May 16, 2000, and August 16, 2001. Rule 3(d) does not require that an appellant "indicate that the appeal also concerns intermediate orders or events that have led to that final judgment." *Zions First Nat'l Bank v. Rocky Mountain Irr., Inc.*, 931 P.2d 142, 144 (Utah 1997); *see also Scudder v. Kennecott Copper Corp.*, 886 P.2d 48, 50 (Utah 1994). Thus, the relevant inquiry is whether the prior orders not named in West American's notice of appeal were "intermediate orders" that led to a final, appealable order.[2]

¶ 17 Nationwide maintains that the earlier orders were not intermediate because they resolved issues distinct from the issue resolved in the order of January 15, 2002. Specifically, the orders of May 16, 2000, and August 16, 2001, addressed Nationwide's liability for, and duty to defend, Hiatt's actions. In contrast, the January 15, 2002 order disposed of the separate issue of Fricke's negligence.

¶ 18 The distinction on which Nationwide relies is not dispositive. This case is a dispute between two insurers over which of them must pay for the damages suffered in a single accident. The fact that one insurer raised multiple theories in support of its claim for reimbursement does not render the orders disposing of these successive theories unrelated. Rather, the May 16, 2000 and August 16, 2001 orders were intermediate steps along the way to the final judgment of January 15, 2002, which disposed of the last remaining theory under which West American sought reimbursement from Nationwide.

¶ 19 The language of the January 15, 2002 order supports our conclusion. The final paragraph of the order states: "The Court dismisses all claims against Kimberly Kay Fricke with prejudice and because this was the sole and remaining issue to be decided, *the Court hereby dismisses Plaintiff's Complaint and all claims contained therein with prejudice.*" (Emphasis added.) In short, the January 15, 2002 order, by its terms, dismisses "all claims" asserted in the complaint. This language is sufficiently broad to encompass the intermediate orders leading to the final judgment. Accordingly, we hold that West American's notice of appeal was sufficient to invoke the court's jurisdiction to review the various theories under which West American seeks reimbursement from Nationwide.

## II. SUMMARY JUDGMENT IN FAVOR OF FRICKE

¶ 20 The trial court granted summary judgment to Fricke, finding no factual basis on which Fricke could have been found negligent in connection with the accident. Because the trial court's entry of summary judgment turns on questions of law, we review it for correctness. We will affirm the summary judgment if there is no genuine issue of material fact and Fricke is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c). In reviewing summary judgments, we view the facts and all reasonable inferences drawn from them in the light most

---

**2.** Nationwide relies on *Jensen v. Intermountain Power Agency*, 1999 UT 10, ¶¶ 6–9, 977 P.2d 474, in which we held that a notice of appeal referring only to a final judgment entered after a jury trial was insufficient to invoke this court's jurisdiction to consider matters resolved on partial summary judgment prior to trial. In finding the notice of appeal defective, we relied on the fact that the appellee was prejudiced by the appellant's failure to designate the earlier matters decided on summary judgment because it deprived the appellee of the opportunity "to proceed with cross-appeals against certain third-party defendants whom the court had dismissed years earlier by granting them summary judgment." *Id.* at ¶ 8. In contrast here, because Nationwide prevailed on all issues in the trial court, Nationwide does not and cannot argue that it has suffered any prejudice as a result of West American's failure to accurately designate the dates of the orders West American challenges on appeal.

favorable to the non-moving party. *Harris v. Albrecht*, 2004 UT 13, ¶ 2, 86 P.3d 728.

■ ¶ 21 Fricke submitted an affidavit describing the accident. The affidavit supports the conclusion that Fricke was not negligent. West American presented no evidence to counter the facts presented in Fricke's affidavit. The trial court held that "[West American] was not entitled to rest on the bare allegations of negligence in [its] pleadings to defeat the motion for summary judgment and was required to set forth, by affidavit or otherwise, specific facts to demonstrate a genuine issue for trial."

¶ 22 West American argues that summary judgment was improper because a jury could have concluded from Fricke's affidavit that she bore some responsibility for the accident. West American argues that Fricke had a "duty to maintain control" and that she may have violated that duty by not "keeping a firmer grip on the steering wheel," by not "reducing speed," or by not "taking evasive action" after Hiatt turned the wheel. While such conclusions may be theoretically possible, West American created no genuine issue of fact on these issues because it failed to introduce *any* evidence from which a jury could arrive at such conclusions. Absent such evidence, any finding of negligence on Fricke's part could have been based on nothing more than speculation.

■ ¶ 23 In granting summary judgment to Fricke, the trial court properly applied rule 56(e) of the Utah Rules of Civil Procedure, which provides:

> When a motion for summary judgment is made and supported as provided in this rule [e.g., by an affidavit], an adverse party may not rest upon the mere allegations or denials of his pleading, but his response ... must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Utah R. Civ. P. 56(e). Fricke's affidavit supported a conclusion that the accident was caused by Hiatt's unexpectedly grabbing and turning the steering wheel. It provided no factual basis for a conclusion either that

Fricke acted negligently or that any such negligence was a proximate cause of the accident. Accordingly, the trial court properly granted summary judgment to Fricke on the issue of her alleged negligence.

### III. WEST AMERICAN'S CLAIMS BASED ON HIATT'S ACTIONS

¶ 24 We next consider West American's claims against Nationwide for reimbursement of the payments it made to Speros. West American alleged it was entitled under principles of equitable subrogation to seek reimbursement directly from Nationwide on the theory that Hiatt, who was responsible for the injuries suffered by Speros, was covered under Fricke's policy with Nationwide. The trial court disagreed. It ruled that West American lacked standing to proceed directly against Nationwide because of a lack of privity of contract between the parties. In the alternative, it ruled that West American had no claim against Nationwide because Hiatt was not covered under Fricke's policy with Nationwide. Specifically, it ruled that Hiatt was not a "permissive user" within the terms of the policy. It also ruled that the intentional acts exclusion in the Nationwide policy would preclude coverage even if Hiatt were deemed a permissive user. Because these are legal conclusions, we review them for correctness, without deference to the trial court's reasoning. *State v. Redd*, 2001 UT 113, ¶ 13, 37 P.3d 1160.

¶ 25 According to its complaint, West American made payments to Speros for his injuries under PIP coverage, as well as payments to Speros for damage to his car and resulting rental car expenses. Because the principles governing West American's attempt to obtain reimbursement of these two types of payments are different, we address each separately.

### A. Reimbursement for PIP Payments

■ ¶ 26 West American has a statutory right to seek reimbursement from Nationwide for the PIP benefits it paid to Speros, but the appropriate forum is arbitration. Pursuant to section 31A–22–309(6) of the Utah Code, arbitration is the exclusive forum in which an insurer may seek reimbursement

from another insurer for its payment of PIP benefits. Utah Code Ann. § 31A–22–309(6) (2003). We recently addressed the scope of this mandatory arbitration provision in *Regal Insurance Co. v. Canal Insurance Co.*, 2004 UT 19, ¶ 1, 93 P.3d 99. In *Regal*, we held that the mandatory arbitration provision of section 31A–22–309(6) "applies to reimbursement disputes based on issues of coverage, as well as reimbursement disputes based on issues of fault." *Regal* is controlling here and requires us to affirm the trial court's ruling that West American lacked standing to sue Nationwide for reimbursement of the PIP payments it made to Speros.

### B. Reimbursement for Other Payments

¶ 27 West American's right to obtain reimbursement from Nationwide for the property damage and rental car expense payments it made to Speros is governed by principles of equitable subrogation and Utah Code section 31A–22–201, which provides:

> Every liability insurance policy shall provide that the bankruptcy or insolvency of the insured may not diminish any liability of the insurer to third parties, and that *if execution against the insured is returned unsatisfied, an action may be maintained against the insurer to the extent that the liability is covered by the policy.*

Utah Code Ann. § 31A–22–201 (2003) (emphasis added). "Subrogation is an equitable doctrine that allows a person or entity which pays the loss or satisfies the claim of another under a legally cognizable obligation or interest to step into the shoes of the other person and assert that person's rights." *State Farm Mut. Auto. Ins. Co. v. Northwestern Nat'l Ins. Co.*, 912 P.2d 983, 985 (Utah 1996) (quotation and citation omitted). Having reimbursed Speros for his damages pursuant to the terms of its policy, West American is subrogated to the rights of Speros under the statute. Accordingly, so long as it meets the conditions specified in the statute, West American may step into the shoes of Speros

and assert a claim directly against Nationwide.

¶ 28 The statutory conditions under which West American can recover from Nationwide for the payments it made to Speros are twofold. First, West American must establish that the damages arising from Hiatt's actions were covered by the Nationwide policy. Second, West American must establish that it obtained, but was unable to satisfy, a judgment against Hiatt. We address each condition in turn.

#### 1. Coverage Issues

¶ 29 Nationwide maintains that its policy with Fricke did not cover Hiatt because Hiatt was not a "permissive user" under the policy. In the alternative, Nationwide contends that even if Hiatt qualifies as a permissive user, he is not covered under the policy by virtue of the policy's "intentional acts" exclusion, which bars coverage of property damage or bodily injury "caused intentionally by or at the direction of an insured." Finally, even if the policy covers Hiatt's actions, Nationwide maintains that it is not bound by the default judgment entered against Hiatt and is therefore entitled to relitigate the issue of Hiatt's liability for the accident. The trial court agreed with Nationwide on all of these issues.

¶ 30 In reviewing coverage issues, we interpret the language of the Nationwide auto insurance policy in light of the requirements of Utah's motor vehicle insurance statutes. Because this review turns on questions of law, we review the conclusions of the trial court for correctness, without deference to its decision. *Holmes Dev., LLC v. Cook*, 2002 UT 38, ¶ 24, 48 P.3d 895.

##### a. Coverage for "Permissive Users"

¶ 31 The Nationwide policy at issue provided liability coverage for Fricke, her household, and anyone who used her car with her permission.[3] Auto insurance policies must

---

**3.** The relevant policy language is as follows:
Under this [liability] coverage, if you become legally obligated to pay damages resulting from the ownership, maintenance, use, loading or unloading of your auto, we will pay for such damages. Anyone living in your household has this protection. *Also protected is any person or organization who is legally responsible for the use of your auto and uses it with your*

cover "permissive users" pursuant to section 31A–22–303(1)(a)(ii) of the Utah Code.[4] The parties dispute whether Hiatt's actions were covered under the policy provision protecting a person "who is legally responsible for the use of your auto and uses it with your permission."

¶ 32 The default judgment against Hiatt established that he was "legally responsible" for damages occurring as a result of his use of Fricke's vehicle. Accordingly, the coverage issue turns on whether the term "permission" contemplates coverage for the actions of a person permitted to use a car generally, or rather is limited to those persons who have permission to take the particular actions immediately giving rise to liability.

¶ 33 Hiatt accepted Fricke's offer for a ride and therefore had permission to use the car in the sense that he was invited to sit in the passenger seat while Fricke drove him from the nightclub to his home. On the other hand, Fricke never gave Hiatt permission to reach over and grab the steering wheel. Nationwide urges us to conclude that grabbing and turning the steering wheel disqualified Hiatt from permissive user status under the terms of the policy. We decline to do so.

¶ 34 We hold that Hiatt was "using [Fricke's car] with [her] permission" despite his sudden action that caused Fricke's car to veer into oncoming traffic. This interpretation is dictated by the statutory language mandating coverage of permissive users and is also supported by practical considerations of efficiency and predictability in resolving insurance claims.

¶ 35 The controlling statutory language does not limit permissive users to those who are given permission to drive or "operate" a vehicle. "Operator" is a defined term under the statute. *See* Utah Code Ann. §§ 31A–22–301(5), 41–12a–103(8) (2003). However, the legislature chose not to use this term to describe the mandatory coverage at issue here. While the legislature could have required liability policies to cover permissive "operators," it chose instead to mandate coverage for permissive "users." We are persuaded that the legislature selected the term "user" advisedly and with the intention that it apply more broadly than the term "operator." *See In re Estate of Flake*, 2003 UT 17, ¶ 25, 71 P.3d 589 ("In construing a statute, we assume that each term in the statute was used advisedly . . . ." (quotation and citation omitted)).

¶ 36 Our interpretation of "permissive user" is also supported by a related provision of the insurance code. The code prevents an insurer from withdrawing the coverage it is required to extend to permissive users on the basis that the permissive user was at fault in causing an accident. *See* Utah Code Ann. § 31A–22–303(1)(a)(iii)(A) (2003). Our interpretation prevents insurers from frustrating this provision by categorizing as unauthorized those actions giving rise to fault.

¶ 37 Practical considerations also support our reading of the statutory language. The construction proposed by Nationwide would give rise to circumstances where a person using someone else's vehicle could move in and out of the zone of permissiveness from moment to moment. Such an interpretation would spawn fact-dependent disputes over whether, at the relevant moment(s), a user had permission to undertake the particular action(s) that caused an accident. For example, the typical automobile owner does not authorize permissive users to exceed speed limits, run red lights, drive recklessly, or engage in any negligent or ill-advised actions. Under the interpretation urged by Nationwide, a person driving someone else's automobile with permission, but without permission to act negligently, would find himself without liability coverage. Other potential scenarios giving rise to coverage disputes under Nationwide's proposed interpretation could involve passengers who inadvertently

---

permission. *This permission may be expressed or implied.*
(Emphasis added.)

4. The statute requires that a vehicle owner's policy insure "any . . . person using any named mo-

tor vehicle with the express or implied permission of the named insured." Utah Code Ann. § 31A–22–303(1)(a)(ii)(A) (2003). The statute later refers to such a person as a "permissive user." *Id.* § 31A–22–303(1)(a)(iii)(A).

bump the driver's arm, open a door at an inopportune moment, or startle the driver.

¶ 38 We find no support for an interpretation that would create additional coverage disputes and inject increased uncertainty into the evaluation of coverage determinations for permissive users. The many fact-dependent issues inherent in such disputes would likely subject both accident victims and the insurance industry not only to more uncertainty, but to increased litigation as well.

¶ 39 We are cognizant that other courts confronted with the issue of whether a steering-wheel-grabber disqualifies himself from permissive user status have decided the issue differently.[5] However, none of these decisions relied on the language of a statutory scheme like ours, which defines the term "operator" but mandates coverage of permissive "users." Moreover, none of these decisions analyzed the problems inherent in an interpretation that renders coverage dependent on the factual complexities presented by a construct where would-be permissive users frequently enter and exit the scope of permission.

¶ 40 Because Hiatt had permission to ride in Fricke's car as a passenger, we hold that he was covered as a "permissive user" under Fricke's policy with Nationwide for the duration of the ride. We further hold that Hiatt's actions in grabbing and turning the steering wheel did not disqualify him from permissive user status.

### b. Validity of the "Intentional Acts" Exclusion

¶ 41 In the alternative, Nationwide asserts that Hiatt was not covered under the policy by virtue of the policy's "intentional acts" exclusion. The policy states that it "does not cover property damage or bodily injury *caused intentionally by* or at the direction of an insured" (emphasis added). Nationwide argues that Hiatt's actions in grabbing and turning the steering wheel were intended to cause injury or damage and therefore were not covered. West American contends that Nationwide's intentional acts exclusion runs afoul of Utah's statutorily mandated coverage requirement. *See* Utah Code Ann. § 31A–22–303(1)(a)(ii)(A) (2003). We agree with West American.

¶ 42 The Utah legislature has enacted a comprehensive statutory scheme mandating minimum liability coverage for motor vehicles. *See id.* §§ 31A–22–303 to –304. This legislative enactment reflects a public policy requiring vehicle owners to carry a minimum level of liability coverage to protect innocent victims of automobile accidents. In the case of an owner's liability policy, the statute requires that the policy insure the person named in the policy and any permissive users "against loss *from the liability imposed by law* for damages arising out of the ownership, maintenance, or use of these motor vehicles within the United States and Canada ... in [dollar] amounts not less than the minimum limits specified." *Id.* § 31A–22–303(1)(a)(ii) (emphasis added).

¶ 43 The statute recognizes no distinction between liability arising out of negligent acts and liability arising out of intentional acts; it simply requires coverage for all liabilities imposed by law. Because the law imposes liability for damages caused negligently *and* intentionally, we conclude that the statute

---

5. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Larsen,* 62 Ill.App.3d 1, 18 Ill.Dec. 582, 377 N.E.2d 1218, 1220 (1978) (holding that because a passenger who grabbed the steering wheel did not have permission to operate the car, the passenger was not covered under a policy that covered relatives' use "provided such use, operation or occupancy is with ... permission"); *United States Fid. & Guar. Co. v. Hokanson,* 2 Kan. App.2d 580, 584 P.2d 1264, 1268 (1978) (concluding that whether a passenger's use is permissive is to be decided by determining whether deviation from a permitted use is minor or material, and that grabbing a steering wheel is a material deviation); *Millet v. Nelson,* 408 So.2d 360, 361 (La.Ct.App.1981) (agreeing with *Larsen,* without analysis); *State Farm Mut. Auto. Ins. Co. v. White,* 60 Or.App. 666, 655 P.2d 599, 601 (1982) (holding that where policy language covered only those who were using the car "within the scope of permission," a passenger who grabbed a steering wheel was not covered); *Progressive Ins. Co. v. Glenn,* 50 Pa. D. & C.4th 271, 283–90, (2000) (finding that a passenger who grabbed a steering wheel deviated "substantially," rather than "inconsequential[ly]," from the scope of permission); *Viking Ins. Co. v. Zinkgraf,* 47 Wash.App. 645, 737 P.2d 268, 269 (1987) ("[T]he grabbing of a steering wheel exceeds the scope of permission to ride as a passenger.").

requires coverage of liability arising out of intentional, as well as negligent, acts.[6]

¶ 44 Our conclusion is buttressed by the fact that the statutory scheme expressly contemplates some exclusions from coverage,[7] but does not authorize exclusions from coverage for the intentional acts of otherwise covered persons. In light of the clear statutory language mandating coverage "against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use" of a motor vehicle and the public policy requiring minimum coverage to protect innocent victims of automobile accidents, the legislature's failure to authorize such intentional acts exclusions is dispositive. Accordingly, we hold that the intentional acts exclusion is unenforceable against accident

victims up to the minimum liability limits prescribed by the statute.[8]

¶ 45 Our holding with respect to the limited validity of the intentional acts exclusion is consistent with our holdings regarding the validity of other exclusions in the arena of automobile liability coverage. In *Allstate Insurance Co. v. United States Fidelity & Guaranty Co.*, 619 P.2d 329 (Utah 1980), we considered the validity of a named driver exclusion to an automobile liability insurance policy. After analyzing the then-applicable statutory scheme and concluding that the legislature had established a mandatory minimum liability coverage requirement for automobile insurance policies, we held that the exclusion was "void in relation to the mini-

---

**6.** Other courts have reached the same conclusion when analyzing similar statutory language. *See, e.g., State Farm Fire & Cas. Ins. Co. v. Tringali,* 686 F.2d 821, 824 (9th Cir.1982) (applying Hawaii law) ("We are persuaded that the adoption of a compulsory scheme of automobile liability insurance very strongly suggests a legislative intent that there be no exclusion of intentional acts of the insured.... From the viewpoint of the victim, the mental state of the [tortfeasor] is irrelevant."); *Wheeler v. O'Connell,* 297 Mass. 549, 9 N.E.2d 544, 546 (1937) ("[I]f the purpose of the statute is to compensate the injured party rather than to save the operator of the vehicle from loss, it is difficult to see why an injured person's rights should be affected by the fact that the operator's conduct was wilful, ... as distinguished from negligent."); *Nationwide Mut. Ins. Co. v. Roberts,* 261 N.C. 285, 134 S.E.2d 654, 659 (1964) ("[Under North Carolina statutes] there is no reason why the victim's right to recover from the insurance carrier should depend upon whether the conduct of its insured was intentional or negligent."); *S.C. Farm Bureau Mut. Ins. Co. v. Mumford,* 299 S.C. 14, 382 S.E.2d 11, 12–14 (1989) (holding that because South Carolina law mandates liability coverage without a distinction between intentional and negligent actions giving rise to liability, it plainly does not permit an exclusion); *accord Hudson v. State Farm Mut. Ins. Co.,* 569 A.2d 1168, 1169 (Del.1990); *Martin v. Chicago Ins. Co.,* 184 Ga.App. 472, 361 S.E.2d 835, 837 (1987); *Mosley v. W. Am. Ins. Co.,* 743 S.W.2d 854, 855 (Ky.Ct.App.1987); *Cannon v. Commerce Ins. Co.,* 18 Mass.App.Ct. 984, 470 N.E.2d 805, 806 (1984); *Hartford Accident & Indem. Co. v. Wolbarst,* 95 N.H. 40, 57 A.2d 151, 153–55 (1948); *Dotts v. Taressa J.A.,* 182 W.Va. 586, 390 S.E.2d 568, 572–74 (1990). *But see Williams v. Diggs,* 593 So.2d 385, 387 (La.Ct. App.1991); *Snyder v. Nelson,* 278 Or. 409, 564 P.2d 681, 684 (1977); *State Farm Mut. Auto. Ins. Co. v. Wertz,* 540 N.W.2d 636, 640–41 (S.D.1995);

*Utica Mut. Ins. Co. v. Travelers Indem. Co.,* 223 Va. 145, 286 S.E.2d 225, 226 (1982).

**7.** For example, the statute recognizes the validity of limitations applicable to motor vehicle businesses, Utah Code Ann. § 31A–22–303(2)(a), and provides that policies need not insure any liability arising under workers' compensation laws or resulting from damage to property owned by the insured, *id.* § 31A–22–303(3). The statutory scheme also expressly provides that an insurer may exclude from coverage other residents of an insured's household who have obtained their own liability insurance. *Id.* § 31A–22–303(8).

**8.** Our holding does not render intentional acts exclusions to automobile liability policies entirely invalid. Contracting parties are free to limit coverage in excess of the statutory minimum requirements. *See State Farm Mut. Auto. Ins. Co. v. Mastbaum,* 748 P.2d 1042, 1044 (Utah 1987) (holding a "household" or "family" exclusion valid and enforceable as to amounts and benefits provided by an automobile policy in excess of statutorily mandated amounts); *Allstate Ins. Co. v. United States Fid. & Guar. Co.,* 619 P.2d 329, 333 (Utah 1980) (upholding the validity of a named driver exclusion for coverage in excess of the minimum statutory coverage requirements). Moreover, although an insurer cannot enforce such an exclusion to deny compensation to an innocent victim of an automobile accident, an insurer may rely on the exclusion to seek reimbursement from the insured who committed the intentional act giving rise to liability. *Cf.* Utah Code Ann. § 31A–22–303(6) (2003) (providing that an insurer may not rely on an insured's lack of cooperation to deny benefits to a third person, but recognizing that an insured's lack of cooperation entitles the insurer to reimbursement from the insured).

mum level of liability coverage mandated" by statute. *Id.* at 333.

¶ 46 Similarly, in *Farmers Insurance Exchange v. Call*, 712 P.2d 231 (Utah 1985), we examined the validity of a policy provision that excluded coverage for bodily injury to members of the insured's household. We held that the exclusion contravened the statutory requirement mandating minimum benefits that must be provided to all persons sustaining personal injuries in automobile accidents. In so holding, we noted that many jurisdictions "interpret their mandatory insurance statutes to require liability insurance subject only to specific statutory exclusions and construe the legislative policy to require minimum coverage to victims of automobile accidents." *Id.* at 234. We concluded that it "would be anomalous if the rights of innocent accident victims, for whose protection the Utah No–Fault Act was adopted, could be defeated by private agreements." *Id.* at 235. The same reasoning applies with equal force to the intentional acts exclusion at issue here.[9]

¶ 47 At the time of the accident and throughout the duration of this action, the statute required a minimum coverage of $25,000 for liability for bodily injury to or death of one person arising out of the use of a motor vehicle in any one accident and $15,000 for liability for property damage in any one accident. Utah Code Ann. § 31A–22–304 (2003). West American has requested reimbursement of a property damage pay-

ment to its insured of $11,514.65, along with rental car expenses of $499.70. Because the amounts at issue in this case fall within the statutory minimums, the intentional acts exclusion does not excuse Nationwide from any obligation it may have to reimburse West American for the payments it made to Speros.

c. Nationwide's Liability for the Default Judgment Against Hiatt

¶ 48 The trial court also held that the default judgment entered against Hiatt is not binding on Nationwide and that Nationwide is entitled to litigate anew the issue of Hiatt's liability for the accident. This is a legal conclusion that we review for correctness.

¶ 49 Nationwide argues that the facts established in a default judgment against one defendant in an action are not deemed admitted against other defendants in that action and that Nationwide is therefore entitled to dispute the facts established by the default judgment against Hiatt. While this may be true in a general sense, it is inapplicable in the context of a liability insurer who breaches a duty to defend an alleged tortfeasor.

¶ 50 The complaint filed by Speros and West American imposed a duty on Nationwide to defend Hiatt. "A policy containing motor vehicle liability coverage imposes on the insurer the duty to defend, in good faith, any person insured under the policy

9. Nationwide asserts that the intentional acts exclusion differs from those invalidated in our prior cases because it is contrary to public policy to provide insurance coverage for intentional acts. We have upheld the validity of an intentional acts exclusion in the context of a homeowner's policy. *Utah Farm Bureau Ins. Co. v. Crook*, 1999 UT 47, ¶ 16, 980 P.2d 685. That case, however, is clearly distinguishable inasmuch as there is no statutory scheme requiring minimum liability coverage for homeowners. Indeed, in that case we recognized that exclusionary clauses in insurance policies were generally enforceable " 'unless contrary to statute or public policy.' " *Id.* at ¶ 12 (quoting *Call*, 712 P.2d at 233). Here, we find the exclusionary provision contrary to the statutory scheme requiring minimum liability coverage for the benefit of victims of automobile accidents. If the legislature is of the view that compulsory liability insurance should not be required to protect accident victims when tortfea-

sors act intentionally to damage or injure them, it is free to amend the statute to explicitly permit coverage exclusions for damages or injuries caused intentionally.

> The principle that one should not be permitted to insure against his own intentional wrongdoing applies to voluntary insurance, not compulsory insurance. Where the Legislature makes coverage compulsory, instead of leaving it to the voluntary market, it has already balanced the public interest in prohibiting insurance for intentionally harmful acts against the public interest in compensating the victims of at fault motorists. By making coverage compulsory, it chooses to weigh the latter interest more heavily than the former. Once the Legislature has made that choice, there is no room for the courts to impose a different judgment based upon their own notions of public policy.

*S.C. Farm Bureau Mut. Ins. Co. v. Mumford*, 299 S.C. 14, 382 S.E.2d 11, 14 (1989).

against any claim or suit seeking damages which would be payable under the policy." Utah Code Ann. § 31A–22–303(5) (2003). It is well established that "[a]n insurer's duty to defend is determined by reference to the allegations in the underlying complaint. When those allegations, if proved, could result in liability under the policy, then the insurer has a duty to defend." *Nova Cas. Co. v. Able Constr.*, 1999 UT 69, ¶ 8, 983 P.2d 575 (citing *Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d 127, 133 (Utah 1997); *Deseret Fed. Sav. & Loan Ass'n v. United States Fid. & Guar. Co.*, 714 P.2d 1143, 1146 (Utah 1986)).

▪ ¶ 51 The complaint in this case alleged that Hiatt's negligent act of grabbing and turning the steering wheel caused the accident. It further alleged that Hiatt was an insured person under Nationwide's policy with Fricke. These allegations created a duty on the part of Nationwide to defend Hiatt. *See United States Fire Ins. Co. v. United Serv. Auto. Ass'n*, 772 S.W.2d 218, 221 (Tex.App.1989) (holding that the insurer of the car owner and driver whose passenger grabbed and turned the steering wheel, causing an accident, had a duty to defend the passenger). Notwithstanding that duty, Nationwide responded to West American's complaint by filing a timely answer on behalf of only itself and Fricke. It failed to answer or defend on behalf of Hiatt, thus exposing Hiatt to the risk of a default judgment. When Nationwide exposed Hiatt to that risk in breach of its duty to defend, it also exposed itself to the risk that it could lose the ability to litigate the facts giving rise to Hiatt's alleged liability and that it could thereafter be held liable for the resulting judgment.

▪ ¶ 52 Despite the default judgment, Nationwide maintains that it must be provided a fair opportunity to litigate the underlying factual issues in the case. However, Nationwide was, in fact, provided that opportunity. We have held that "as a general rule[,] when an insurer, whose policy requires it to defend its insured, receives notice of a suit against [the insured] and is allowed an opportunity to defend, but refuses, [the insurer] is bound by the findings and judg-

ment therein." *McCarty v. Parks*, 564 P.2d 1122, 1123 (Utah 1977).

¶ 53 In this case, Nationwide had notice and an opportunity to defend when it was presented with the original complaint filed by West American. The original complaint alleged that Hiatt was liable for the accident and that Nationwide's policy covered Hiatt's actions. Nationwide therefore had notice from the inception of this action that Hiatt may have been insured under its policy with Fricke. When Nationwide chose not to defend Hiatt, it forfeited its opportunity to dispute the underlying facts of the accident. *See McCarty*, 564 P.2d at 1124 ("It is undoubtedly true that where any substantial question as to coverage exists, it may involve some risk on the part of the insurance company to refuse to defend."). Nationwide cannot avoid the consequences of its failure to defend by asserting that it had no opportunity to refute the factual basis for the claims against Hiatt.

2. Inability to Satisfy the Judgment Against Hiatt

¶ 54 Having concluded that Hiatt's liability under the default judgment was covered by the Nationwide policy, we turn to the question of whether West American unsuccessfully attempted to execute on the judgment. Under the statute, "the bankruptcy or insolvency of the insured may not diminish any liability of the insurer to third parties" such as Speros or West American. Utah Code Ann. § 31A–22–201 (2003). However, an insurer is subject to a direct action by a third party only "if execution against the insured is returned unsatisfied." *Id.*

¶ 55 West American is entitled to reimbursement from Nationwide if it attempted unsuccessfully to execute on its judgment against Hiatt. Hiatt is now deceased, and all indications in the record suggest that execution against Hiatt's estate would prove futile. Nevertheless, there is nothing in the record to suggest that West American actually attempted an execution against Hiatt that was returned unsatisfied. Because an unsatisfied attempt to execute on a judgment against an insured is a prerequisite element of West American's right to pursue a direct action against Nationwide, we remand to the trial court for a finding on this issue.

## CONCLUSION

¶ 56 We affirm the summary judgment granted to Kimberly Fricke by the trial court on the issue of Fricke's negligence. We also affirm the trial court's ruling that West American did not have standing to seek reimbursement from Nationwide in the context of the PIP payments West American made to Speros, because reimbursement of those payments may be sought only in arbitration. We reverse the rulings of the trial court with respect to Nationwide's obligation to reimburse West American for the other payments it made to Speros. West American is entitled to seek recovery directly from Nationwide if Hiatt's actions were covered by the policy and execution against Hiatt has been returned unsatisfied.

¶ 57 We hold that Hiatt's actions were covered by the policy. However, the record does not indicate whether execution against Hiatt has been returned unsatisfied. Accordingly, we remand this case to the trial court for a factual determination of this issue. If West American unsuccessfully attempted to execute on the default judgment against Hiatt, judgment must be entered in favor of West American.

¶ 58 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH's opinion.