**CAPITOL INDEMNITY CORPORATION,**
Plaintiff,

v.

**EVOLUTION, INC., d/b/a Tropics, Harold and Jeanne Anderson d/b/a Catherine's Collectibles, Meridian Mutual Ins. Co., Mike Naseth d/b/a One On One Fitness Center, United Fire & Cas. Co., Transportation Ins. Co., Bredahl & Associates, PC, The Crown Jewels, Inc., Great Plains Surgical, Inc., St. Paul Ins. Co., Leef Brothers,**

Inc., 52 Broadway LLC, EMC Ins. Co., C and J Leasing Corp., Dolund Partnership LLP, Scottsdale Ins. Co., Richard Engen d/b/a Engen Consulting, Trans Ad, Inc., Auto–Owners Ins. Co., Q–Corp. d/b/a Quiznos, Generali–US Branch, George M. Black Properties LLP, Federal Ins. Co., and Fuel Card Systems, Inc., Defendants.

Civil No. A3–02–33.

United States District Court,
D. North Dakota,
Southeastern Division.

Nov. 20, 2003.

Thomas L. Zimney, Bradley Allen Meyer, Zimney Foster Johnson Dittus & Flaten, Grand Forks, ND, for plaintiff.

Jeffrey W. Hane, Brink, Sobolik, Severson, Malm & Albrecht, P.A., Hallock, MN, Paul Rudell Oppegard, Corey J. Quinton, Smith, Bakke, Hovland & Oppegard, Moorhead, MN, Douglas W. Gigler, Nilles, Hansen & Davies, Ltd., Carlton J. Hunke, Angela Elsperger Lord, Vogel Law Firm, Jeff A. Bredahl, Tracy Andrew Gompf, Bredahl, Frisk & Gompf, Fargo, ND, Richard A. Clapp, Pearson Christensen, Grand Forks, ND, Jon R. Brakke, Richard Norval Jeffries, Jeffries Olson & Flom Pa, William P. Harrie, Nilles, Hansen & Davies, Ltd., Fargo, ND, Steven James Cahill, Cahill & Marquart, P.A., Moorhead, MN, Gordon H. Hansmeier, Rajkowski Hansmeier, Ltd., St. Cloud, MN, for defendants.

## MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW

WEBB, District Judge.

### I. INTRODUCTION

The plaintiff, Capitol Indemnity, requests a declaratory judgment that it had no obligations, pursuant to the terms and conditions of the general liability insurance policy issued to Evolution Incorporated to provide coverage for personal losses sustained by Evolution or to defend or indemnify Evolution against claims made by other individuals or entities as a result of the fire at Tropics Nightclub. Capitol Indemnity submits it is entitled to judgment as a matter of law and motions this Court for such relief (doc. # 104). The defendants, consisting of individuals and entities damaged by the Tropics fire, contend multiple factual issues remain and therefore judgment as a matter of law is inappropriate.

As articulated below, Capitol Indemnity's Motion for Summary Judgment is GRANTED.

## II. FACTS

### A. The Fire

The present case involves an incident well-documented by the local news services. In the twilight hours of April 30, 2000, the Fargo Police Department received a call from Michael Maurer, who reported a break-in and fire at Tropics, his corporation's downtown Fargo nightclub. An inebriated Maurer indicated that an unknown assailant struck him on the head and the next thing he remembered was the smell of smoke. The fire department arrived on the scene to battle the blaze, but due to the intense nature of the fire and the close proximity of buildings in the downtown area the fire department was unable to prevent damage to the above-captioned defendants' businesses.

### B. The Investigation

The April 30th incident was suspiciously similar to a March 22, 2000 incident where Maurer reported that two men entered Tropics in the early morning hours, assaulted him, and left behind a container of gasoline. The fire marshal determined arson was the cause of the fire based on Maurer's statement, the previous incident, and evidence uncovered at the scene. The fire marshal's investigation revealed that an ignitable liquid was applied to items, later determined to be sales receipts, in the west mezzanine of Tropics, and a trail of the liquid was applied down the stairway to the first floor. A heat producing device was then used to ignite the liquid. The resulting fire spread throughout the building in a manner "of normal fire progression."

Before long the police discredited Maurer's claim of an unknown assailant and he became the primary suspect in their arson investigation. Eventually, Maurer confessed to starting the fire and plead guilty to criminal arson. Maurer stated that he started the fire to destroy sales receipts because he worried Tropics was in danger of losing its liquor license.

### C. The Corporation

Maurer, along with Trevor Trautman, were shareholders, officers and directors of Evolution Incorporated, which operated Tropics Nightclub. Records indicate that Maurer, with 560 shares, and Trautman, with 260 shares, were Evolution's only shareholders. Records also indicate that Maurer, as President and Treasurer, and Trautman, as Vice–President and Secretary, were Evolution's only officers. Maurer and Trautman similarly were Evolution's only directors. Maurer ran the day-to-day business of corporation, but consulted Trautman, the manager of Tropics, before making decisions.

### D. The Insurance Policy

On September 17, 1999, Maurer, on behalf of Evolution, purchased a comprehensive general liability policy from Capitol Indemnity. On March 10, 2000, Maurer, on behalf of Evolution, amended the policy to provide property coverage for 58 and 60 Broadway, including improvements and betterments. Evolution also increased the policy coverage limits.

### E. The Motive and Plan

Evolution, on behalf of Tropics Nightclub, applied for and received a Class F liquor license from the City of Fargo. A Class F license requires food sales to constitute 50% of gross sales. On April 7, 2000, the Fargo police conducted an inspection of Tropics and, among other violations, observed that Tropics was not meeting the 50% food sales quota as required by its liquor license. The police informed

Maurer that the department may conduct an audit to determine if Tropics fulfilled the food sales quota.

Maurer claims Trautman and he discussed burning the building to destroy sales receipts that could establish the lack of food sales versus alcohol sales and to collect insurance proceeds. Maurer testified that, in furtherance of this plan Trautman removed all money and other valuable items from the nightclub on the evening of April 30th. Trautman admits to removing cash from Tropics and being generally aware of Maurer's plan to burn sales receipts, but vehemently denies conspiring with Maurer. Trautman has never been convicted of any criminal offense in regards to the fire.

## III. DISCUSSION

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is "material" if it might affect the outcome of a case, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Churchill Bus. Credit, Inc. v. Pacific Mut. Door Co.,* 49 F.3d 1334, 1336 (8th Cir.1995).

The inquiry for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." However, the nonmovant must do more than merely restate earlier pleadings. See *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 510 (8th Cir.1995). Mere arguments or allegations are insufficient to defeat summary judgment; the nonmovant must advance specific facts to create a genuine issue of material fact for trial. See, e.g., *F.D.I.C. v. Bell,* 106 F.3d 258, 263

(8th Cir.1997). This requirement is not satisfied by "speculation, conjecture, or fantasy"; it requires sufficient probative evidence to allow a finding in its favor, assuming the evidence is established at trial. See *Wilson v. International Business Machines Corp.,* 62 F.3d 237, 241 (8th Cir.1995).

Applying the above-mentioned standard to the present case, the Court finds that Capitol Indemnity is entitled to judgment as a matter of law for three reasons: (A) Maurer's actions do not constitute an "occurrence" as that term is defined within the insurance policy; (B) the insurance policy excludes from coverage damage expected or intended by the insured; and (C) North Dakota law and public policy prohibits insurance coverage for intentional and willful acts of arson.

### A. "Occurrences" As Defined Within Policy

■ The insurance policy at issue provides coverage for "occurrences" that take place in the coverage territory. The insurance policy defines the term "occurrence" as an "accident." The word accident is not defined within the policy, but the North Dakota Court Supreme Court defines an "accident" as "happening by chance, unexpectedly taking place, not according to the usual course of things." *Wall v. Penn. Life Ins. Co.,* 274 N.W.2d 208, 216 (N.D. 1979). Capitol Indemnity argues, and the Court agrees, that the property damage suffered by the defendant was "the natural and usual and expected result" of the fire started by Maurer, thus not an "accident" or "occurrence." Id.; *Frankenmuth Mut. Ins. Co. v. Masters,* 460 Mich. 105, 595 N.W.2d 832, 835–39 (1999) (finding no "occurrence" in a case where the person intentionally started the fire but did not intend the resulting damage).

The defendants assert that both Trautman's and Evolution's actions constitute negligence and therefore an "occurrence" under the policy. The defendants assert that Trautman knew or should have known of Maurer's plan to start a fire and failed to warn or stop Maurer's conduct. The defendants contend that Trautman's negligence is imputable to the corporation as an "occurrence." The defendants further assert that Evolution was negligent in maintaining its premises by neglecting to install a sprinkler system, fire extinguishers, and smoke detectors. However, Maurer's intent trumps Trautman's and Evolution's so-called negligence because the damages arose out of *Maurer's intentional act. Cf. Northwest G.F. Mutual Ins. Co. v. Norgard,* 518 N.W.2d 179, 184 (N.D.1994) (finding an insurance policy did not provide coverage for negligence claims against insured arising out of intentional act of sexual molestation); *Cuervo v. Cincinnati Ins. Co.,* 76 Ohio St.3d 41, 665 N.E.2d 1121, 1122–23 (1996) (same). Furthermore, if proven Trautman's actions would constitute willful disregard, not negligence.

The defendants further assert that Trautman's negligent conduct was an efficient proximate cause of the conduct or at least raises a factual question as to whether his conduct constitutes an efficient proximate cause. *Western Nat. Mut. Ins. Co. v. University of North Dakota,* 643 N.W.2d 4 (N.D.2002) (recognizing the efficient proximate cause doctrine). The Court disagrees. The efficient proximate cause test applies only where two separate or distinct perils could have occurred independently of the other and caused damage. *Pieper v. Commercial Underwriters Ins.,* 59 Cal.App.4th 1008, 69 Cal.Rptr.2d 551, 557 (1997). Here, there is only one peril, certainly only one predominating cause of loss—the fire started by Maurer.

## B. Policy Exclusion For Intended Acts

 Insurance coverage is precluded not only for the absence of an "occurrence," but also because the policy excludes payment for intentional acts. The insurance policy at issue excludes coverage for " 'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." The defendants contend there is an issue in regard to who constitutes an "insured." Evolution and its officers and directors in respect to the performance of their duties are "insureds" under the policy. The defendants contend that Maurer did not start the fire in furtherance of his duties as officer or director, therefore the policy exclusion does not apply because he is not an insured under the insurance policy. The defendants contend that not all director and officer conduct is imputed to the corporation. According to the defendants, the North Dakota Century Code describes the duties of corporate officers and agents and instructs the Court as to what conduct may be imputed. Section 10–19.1–60 states that an officer must "discharge duties of an office in good faith, in a manner the officer reasonably believes to be in the best interests of the corporation, and with the care an ordinarily prudent person in a like position would exercise in similar circumstances." This statute defines the duty of care expected of an officer or director; Maurer undeniably breached his duty of care to the corporation. The fact that an officer or director breached a duty to the corporation, however, is not determinative of the issue before the Court. If such a statute did control, a corporation could never be held criminally or civilly responsible for its wrongful intentional conduct because every wrongful intentional act is contrary to the best interests of a corporation.

 With that said, Maurer's actions were not only that of an officer and di-

rector, but his actions were that of the corporation. See 10 Couch on Ins. § 149:51 (stating that insurance coverage is precluded where misdeeds of a corporation's agents are imputed to the corporation). A corporation is an artificial entity that can act only through its agents. *American Nat. Fire Ins. Co. v. Hughes,* 658 N.W.2d 330, 336 (N.D.2003). Courts impute liability for acts of individuals to corporations where the act of the individual is performed on behalf of the corporation. *Worcester Ins. Co. v. Fells Acres Day School, Inc.,* 408 Mass. 393, 558 N.E.2d 958, 969 (1990). In insurance cases involving arson, "courts have permitted insurers to attribute arson to a corporation by a variety of methods other than a formal grant of authority." *Cora Pub, Inc. v. Continental Cas. Co.,* 619 F.2d 482, 486 (5th Cir.1980). Courts impute intent to the corporation where the arsonist owns all or substantially all of the stock in the corporation or where the dominating officer or manager of the corporation commits arson for the benefit of the corporation. *Thompson Hardwoods, Inc. v. Transit Ins. Co.,* 2002 WL 440222, *13 (S.D.Ind. March 15, 2002) (granting summary judgment in favor of insurer where the arsonist was employee, officer, director, and shareholder of insured corporation); *Blitch Ford, Inc. v. MIC Property and Cas. Ins. Corp.,* 90 F.Supp.2d 1377, 1381–83 (M.D.Ga.2000) (arson by officer/director imputed to insured corporation where officer had 49% stake in corporation, corporation was in dire financial straits, and insurance benefits would have relieved the corporation's problems); *K & T Enterprises, Inc. v. Zurich Ins. Co.,* 97 F.3d 171, 177–79 (6th Cir.1996) (arson by 50% shareholder and corporate president precluded wife of corporate president, a 50% shareholder, from

recovering under the insurance policy); *St. Paul Fire and Marine Ins. Co. v. Cumiskey,* 204 Mont. 350, 665 P.2d 223, 227 (1983) (where officer, director, shareholder, and managing agent of corporation was responsible for setting fire, insurer had valid defense to claim); *Midwest Seafood, Inc. v. Truck Ins. Exchange,* 431 F.Supp. 1197, 1197 (E.D.Mo.1977) (insured corporation could not recover under insurance policy for fire intentionally set by corporation's president); *General Elec. Credit Corp. v. Aetna Cas. & Sur. Co.,* 437 Pa. 463, 473, 263 A.2d 448 (1970) (where fire was result of arson by owners of corporate insured, fire insurers were not liable to insured); *Erlin–Lawler Enterprises, Inc. v. Fire Ins. Exchange,* 267 Cal.App.2d 381, 73 Cal.Rptr. 182, 185 (1968) (a corporation is precluded from recovery on insurance policy where the arsonist is directly or indirectly benefitted by recovery).

Here, Maurer, with 68% of the shares in Evolution, was the majority shareholder. He controlled the business as one of only two directors and as President and Treasurer. Although he consulted with Trautman, Maurer ran the day-to-day affairs of the corporation. In essence, Maurer was Evolution and it is impossible to separate his conduct from that of the corporation. Merely because Maurer's actions were illegal does not mean that his actions were not those of the corporation. Maurer testified he started the fire to destroy sales receipts that could establish Tropic's failure to sell the requisite amount of food and to collect insurance proceeds on behalf of Evolution. Maurer saw his business on the verge of losing its liquor license and therefore its livelihood, and he took ill-conceived corrective action on behalf of the corporation. Therefore, by law, his intent is imputed to the corporation and insurance coverage is foreclosed.[1]

1. The defendants contend that a question of fact remains as to whether Trautman assented to the arson. The answer to this question, however, is irrelevant to the issue before the

## C. North Dakota Public Policy

██ Even if the insurance policy did not specifically exclude coverage in the present case, public policy precludes an insured from being indemnified for losses caused by the insured's intentional or willful conduct. See N.D. Cent.Code § 9–08–02 ("[a]ll contracts which have for their object, directly or indirectly, the exempting of anyone from responsibility for his own fraud or willful injury to the person or property of another, or in violation of law, whether willful or negligent, are against the policy of the law."); N.D. Cent.Code § 26.1–32–04 ("[a]n insurer is not liable for a loss caused by the willful act of the insured, but the insurer is not exonerated by the negligence of the insured or of the insured's agents or others."); see also *Nodak Mutual Ins. Co. v. Heim,* 559 N.W.2d 846, 851 (N.D.1997)(finding that public policy precludes an insured from being indemnified for losses caused by the insured's intentional conduct); *Continental Casualty Co. v. Kinsey,* 499 N.W.2d 574, 581 (N.D.1993)(public policy prohibits contracts that exempt persons from being held responsible for wrongful intentional conduct); *United States Fidelity & Guaranty Co. v. American Employers' Ins. Co.,* 159 Cal.App.3d 277, 205 Cal.Rptr. 460, 465 (1984) (discussing a California statute identical to § 9–08–02). The defendants note that this public policy exclusion applies only to intentional acts. N.D. Cent.Code § 26.1–32–04 (stating that an insurer is not exonerated by the negligence of the insured). The defendants argue that intent is a question of fact inappropriate for summary judgment, since intent is rarely presumed. *Kabob House, Inc. v. Houston General Ins. Co.,* 17 F.Supp.2d 1090, 1092 (D.N.D.1997). The defendants contend that Maurer intended to injure Tropics,

not the defendant third parties. The defendants' contention, however, is shortsighted. The law does not require a person to intend the actual resulting damage of an act; as long as the act itself was intentional, the law assumes the person intends the natural and probable consequences of the act. *Ohio Cas. Ins. Co. v. Horner,* 583 N.W.2d 804, 808 (N.D.1998). Here, it is undisputed that Maurer intentionally started a fire using lighter fluid as an accelerant. The natural and probable result of such an act is that the building would catch fire. The building was in a downtown area in close proximity to other buildings, so it is natural and probable that other buildings would also catch fire or suffer smoke damage. *Nationwide Ins. v. Board of Trustees of Univ. of Ill.,* 116 F.3d 1154, 1157 (7th Cir.1997) (finding that the insured intended to damage the school's Astroturf even though he did not intend the extent of the damage). Therefore, Maurer's intent is established as a matter of law.

██ The defendants further argue that mental illness or defect negates intent. The defendants point out that Maurer was extremely intoxicated and very emotional when he started the fire, thus a question of fact remains as to his mental abilities. However, it is well-settled that a person's voluntary intoxication does not negate intent. See, e.g., *Dolan v. State Farm Fire & Cas. Co.,* 573 N.W.2d 254, 257 (Iowa 1998).

██ Finally, the defendants argue that public policy does not prevent an insurance company from paying innocent third parties because Maurer and Evolution will not profit by allowing coverage. This argument is also short-sighted. By allowing

Court. The approval of all directors, officers and shareholders is not necessary to impute conduct to a corporation. See *K & T Enter-* *prises,* 97 F.3d at 177–79 (imputing conduct to the corporation based on less than total control).

coverage, Maurer and Evolution will benefit because the insurance company will defend against the claim and pay some or all of the damages, thereby reducing the insured's out-of-pocket expenses. Thus, North Dakota law and public policy prevent insurance coverage in the present case.[2]

## IV. CONCLUSION

For the aforementioned reasons, Capitol Indemnity's Motion for Summary Judgment is GRANTED (doc. # 104). Each party shall bear its own costs and attorney's fees.

IT IS SO ORDERED.

2. The defendant, Dolund Partnership, argues that it is entitled to damages for 58 and 60 Broadway under the Commercial Property Insurance Policy issued to Evolution. The Court need not address this concept because it finds that all insurance contract policy provisions that allow coverage for intentional acts of the insured are void as against public policy.