2010 ND 22

GRINNELL MUTUAL REINSURANCE COMPANY, an Iowa Insurance Company, Plaintiff and Appellant

v.

Norman C. THOMPSON, Shelly M. Thompson, Foltz Trucking, Inc., a Minnesota Corporation, FBF Leasing, Inc., a Minnesota Corporation, Gary Johnson, Minnesota resident, and Continental Western Insurance Company, an Iowa Insurance Company, Defendants

Foltz Trucking, Inc., a Minnesota Corporation, FBF Leasing, Inc., a Minnesota Corporation, and Continental Western Insurance Company, an Iowa Insurance Company, Defendants and Appellees.

No. 20090250.

Supreme Court of North Dakota.

Feb. 17, 2010.

Lyle W. Kirmis (argued) and Bradley N. Wiederholt (appeared), Zuger Kirmis & Smith, Bismarck, ND, for plaintiff and appellant.

Alan D. Baker (argued) and Daniel E. Phillips (appeared), Solberg, Stewart, Miller & Tjon, Fargo, ND, for defendants and appellees.

VANDE WALLE, Chief Justice.

[¶ 1] Grinnell Mutual Reinsurance Company appealed from the district court's judgment ordering Grinnell to provide coverage or indemnification to Shelly Thompson with regard to a collision between a semi-trailer owned by Foltz Trucking, Inc. and a vehicle driven by Shelly Thompson. The district court also ordered Grinnell to defend Shelly Thompson against any actions arising out of the collision. Finally, the district court declared Foltz, FBF Leasing, Inc., Gary Johnson, or Continental Western Insurance Company have, or could have, claims against Grinnell arising out of the collision. We reverse the district court's judgment, because Shelly Thompson did not have permission to drive the vehicle and the Financial Responsibility Laws do not set minimum levels of insurance coverage for nonpermissive operators.

I.

[¶ 2] Shelly Thompson and Norman Thompson are married and live together. Norman Thompson owns a 1995 Buick Regal. Shelly Thompson has no ownership interest in the Buick. In 2005, Grinnell issued an insurance policy to Norman Thompson that covered three vehicles, including a 1995 Buick Regal. Norman Thompson is listed in the policy as the "named insured." As used in the policy, "you" and "your" are defined as:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

The policy provides:

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. . . . We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. . . . We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B. "Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer".

2. Any person using "your covered auto".

The policy exclusions state:

A. We do not provide Liability Coverage for any "insured":

1. Who intentionally causes "bodily injury" or "property damage".

. . . .

8. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (A.8.) does not apply to a "family

member" using "your covered auto" which is owned by you.

The policy also states, "When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required."

[¶ 3] In November 2005, Shelly Thompson drove the Buick without Norman Thompson's permission. The Buick collided with a semi-trailer owned by Foltz and driven by Foltz's employee, Johnson. Following the collision, Shelly Thompson told a highway patrol officer she wanted to commit suicide, but did not want to hurt anyone else. Responding to a doctor's questions, Shelly Thompson confirmed she wanted to kill herself and she tried to drive into the semi-trailer.

[¶ 4] In May 2007, Foltz sued Norman and Shelly Thompson for damages arising out of the collision. Grinnell provided a defense for the Thompsons against Foltz's lawsuit, subject to its right to deny coverage or withdraw. Foltz and its insurance company, Continental Western Insurance Company, made a demand on Grinnell, claiming Grinnell is liable for the damages arising out of the collision. In October 2007, Grinnell sought a declaratory judgment that it is not obligated to provide coverage or a defense to the Thompsons with regard to the collision between the Buick and the semi-trailer, and that Foltz, FBF, Johnson, and Continental have no claim against Grinnell because of Norman Thompson's policy.

[¶ 5] In October 2008, Foltz, FBF, and Continental filed a motion for partial summary judgment, asking the district court to declare "that Grinnell is liable for any damage caused by [Shelly] Thompson's use of the motor vehicle, whether intentional or not, up to the minimum liability limits for property damage established by North Dakota law." Grinnell then filed its own motion for summary judgment. In its memorandum opinion, the district court cited *Hughes v. State Farm Mut. Auto. Ins. Co.*, 236 N.W.2d 870, 883 (N.D.1975), stating:

> The "important particulars as the coverage required by § 39–16.1–11," as summarized in *Hughes*, are: (1) limits of liability not less than the dollar amounts listed in N.D.C.C. § 39–16.1–11(2)(b); (2) insuring the named insured and any other person driving said motor vehicle with the permission of the named insured; and (3) insuring such persons against loss arising out of the ownership, maintenance or use of such insured motor vehicle within the United States of America or the Dominion of Canada.

The district court stated Norman Thompson is the named insured of Grinnell's policy and Shelly Thompson did not have permission to drive the Buick. The district court concluded Grinnell's policy did not comply with the requirements of N.D.C.C. § 39–16.1–11, as described in *Hughes*, because it provides "coverage for auto accidents rather than for loss imposed by law." The district court stated further, "[A] limitation to only provide coverage for damages that the insured becomes responsible for because of an auto accident is in conflict with the minimum requirements, the minimum requirement of providing coverage for loss from liability imposed by law will prevail."

[¶ 6] The district court concluded, "In summary, because Norman's policy with [Grinnell] provides broader coverage than is required for whom coverage is applicable, and the policy provides narrower coverage than required for liability imposed by law under the Financial Responsibility Laws, [Grinnell]'s motion is **DENIED,** and Defendants' motion is **GRANTED.**" (Emphasis in original).

## II.

[¶ 7] On appeal, Grinnell argues N.D.C.C. § 39–16.1–11 does not require it to provide coverage to Shelly Thompson because she drove the Buick without the permission of Norman Thompson, the named insured. Grinnell argues the policy's exclusion for intentional acts applies. Foltz, FBF, and Continental argue the policy's Conformity Clause, stating "this policy shall comply with the law to the extent required," dictates Grinnell must provide coverage as described in N.D.C.C. § 39–16.1–11(2)(b) "against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicles." They also argue Shelly Thompson qualifies as a "named insured" under the policy because she and Norman Thompson are treated equally under the policy.

[¶ 8] This Court's standard of review on summary judgment is well-established:

Under N.D.R.Civ.P. 56, summary judgment is a procedural device for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. The party moving for summary judgment must show there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. A district court's decision on a motion for summary judgment is a question of law that we review de novo on the record. In determining whether summary judgment was appropriately granted, we view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record.

*Kambeitz v. Acuity Ins. Co.,* 2009 ND 166, ¶ 8, 772 N.W.2d 632 (quoting *Bragg v. Burlington Res. Oil & Gas Co. LP,* 2009 ND 33, ¶ 5, 763 N.W.2d 481). Neither party argues there is a genuine issue of material fact precluding summary judgment.

[¶ 9] This Court reviews a district court's interpretation of a statute de novo:

Interpretation of a statute is a question of law fully reviewable on appeal. Our primary goal in statutory construction is to ascertain the intent of the legislature, and we first look to the plain language of the statute and give each word of the statute its ordinary meaning. When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. If, however, the statute is ambiguous or if adherence to the strict letter of the statute would lead to an absurd or ludicrous result, a court may resort to extrinsic aids, such as legislative history, to interpret the statute. A statute is ambiguous if it is susceptible to meanings that are different, but rational. We presume the legislature did not intend an absurd or ludicrous result or unjust consequences, and we construe statutes in a practical manner, giving consideration to the context of the statutes and the purpose for which they were enacted.

*State v. Brown,* 2009 ND 150, ¶ 15, 771 N.W.2d 267 (quoting *In re M.W.,* 2009 ND 55, ¶ 6, 764 N.W.2d 185).

[¶ 10] The interpretation of an insurance contract is also a question of law fully reviewable on appeal. *Schleuter v. Northern Plains Ins. Co.,* 2009 ND 171, ¶ 8, 772 N.W.2d 879 (citing *ACUITY v. Burd & Smith Constr.,* 2006 ND 187, ¶ 7, 721 N.W.2d 33). We have also described

the standards for construing an insurance contract:

> Our goal when interpreting insurance policies, as when construing other contracts, is to give effect to the mutual intention of the parties as it existed at the time of contracting. We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract. While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined term to provide coverage for the insured. We construe insurance contracts as a whole to give meaning and effect to each clause, if possible. The whole of a contract is to be taken together to give effect to every part, and each clause is to help interpret the others.

*Id.* (quoting *Ziegelmann v. TMG Life Ins. Co.*, 2000 ND 55, ¶ 6, 607 N.W.2d 898) (internal quotes omitted). "Exclusions from coverage ... must be clear and explicit and are strictly construed against the insurer." *Id.* (quoting *Nationwide Mut. Ins. Cos. v. Lagodinski*, 2004 ND 147, ¶ 9, 683 N.W.2d 903) (omission in original). However, this Court "will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage." *Id.* (quoting *Lagodinski*, at ¶ 9).

[¶ 11] North Dakota's "Financial Responsibility Laws" are found in N.D.C.C. chapters 39–16 and 39–16.1. *Hughes*, 236 N.W.2d at 877. The Financial Responsibility Laws state a motor vehicle liability policy, as defined by those statutes:

> Must insure the person named therein and any other person, as insured, using such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such motor vehicle, as follows: twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and subject to said limit for one person, fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and twenty-five thousand dollars because of injury to or destruction of property of others in any one accident.

N.D.C.C. § 39–16.1–11(2)(b). This Court has stated, "[T]he terms of a motor vehicle liability policy issued and delivered in this State must provide at least the minimum coverage outlined in § 39–16.1–11. Such provisions are express declarations by the Legislature of the public policy of this State, and as such are implicit in the contract of insurance." *Hughes*, 236 N.W.2d at 885 (citing *Wildman v. Gov't Employees' Ins. Co.*, 48 Cal.2d 31, 307 P.2d 359 (1957); *Jenkins v. Mayflower Ins. Exch.*, 93 Ariz. 287, 380 P.2d 145 (1963)). We summarized the coverage required, "[S]uch coverage must insure all permissive operators against loss for liability, within certain monetary limits, for damages imposed by law." *Id.* at 883–84.

[¶ 12] Section 39–16.1–11(2)(b), N.D.C.C., requires a minimum level of coverage for "the person named therein and any other person, as insured, using such motor vehicle or motor vehicles with the express or implied permission of such named insured." If Shelly Thompson is

neither a named insured, nor a person using the vehicle with the permission of the named insured, then Grinnell need not provide the minimum coverage required by N.D.C.C. § 39–16.1–11(2)(b), and the language of the policy controls.

[¶ 13] Foltz, FBF, and Continental assert Shelly Thompson is a "named insured." They argue Shelly and Norman Thompson are equal under the policy because, according to the policy, "you" and "your" include "[t]he 'named insured' shown in the Declarations; and ... [t]he spouse if a resident of the same household." They further argue the policy considers Shelly Thompson to be an owner of the Buick, because the policy describes the Buick as "[y]our covered auto" and Shelly is included in the term "your." The Financial Responsibility Laws do not define the term "named insured." They do, however, require an insurance policy to "state the name and address of the named insured." N.D.C.C. § 39–16.1–11(4). Grinnell's policy lists Norman Thompson as the "named insured" and lists his address. The district court found Norman Thompson to be the policy's named insured. While Shelly Thompson is an "insured" under the policy, she is not the "named insured." Other courts have determined that when a motor vehicle liability policy includes the spouse of the "named insured" in the definition of "you" and "your," that spouse does not enjoy "named insured" status. *See Odom v. Farmers Ins. Co.,* 216 Ariz. 530, 169 P.3d 120, 122 n. 1 (Ariz. Ct.App.2007); *Nationwide Mut. Ins. Co. v. Buffetta,* 230 F.3d 634, 639 n. 3 (3d Cir. 2000). Norman Thompson alone is the "named insured" with regard to Grinnell's policy and the Financial Responsibility Laws.

[¶ 14] The parties do not dispute that Shelly Thompson drove the Buick without Norman Thompson's permission. Shelly Thompson is thus a nonpermissive operator, not a named insured or a person using the vehicle with the named insured's permission. The Financial Responsibility Laws require coverage for "all permissive operators against loss for liability, within certain monetary limits, for damages imposed by law." *Hughes,* 236 N.W.2d at 884. The Financial Responsibility Laws do not require any minimum level of coverage for nonpermissive operators, such as Shelly Thompson. The coverage Grinnell must provide for Shelly Thompson is thus dictated by the terms of Grinnell's policy, not the Financial Responsibility Laws.

[¶ 15] Grinnell's policy provides greater coverage under some circumstances than is required by the Financial Responsibility Laws. Grinnell's policy provides coverage for auto accidents in which a family member of the named insured uses the vehicle without permission. The policy, to that extent, provides coverage beyond what is required by the Financial Responsibility Laws, because the Financial Responsibility Laws do not require a minimum level of coverage for nonpermissive users. Grinnell is free to offer greater coverage than is required by the Financial Responsibility Laws in its policy if it chooses to do so. *See Grinnell Mut. Reins. Co. v. Farm & City Ins. Co.,* 2000 ND 163, ¶ 16, 616 N.W.2d 353 ("The statute does not prevent insurers from providing broader coverage than is statutorily required") (citing *Haser v. Maryland Cas. Co.,* 78 N.D. 893, 896, 53 N.W.2d 508, 510 (1952); 7 Lee R. Russ, *Couch on Insurance* § 109.21 (3d ed. 1997)). Because Grinnell provides greater coverage in one area, it is not required to provide greater coverage than is required by the Financial Responsibility Laws under all circumstances. Grinnell's policy excludes coverage for intentionally caused bodily injury or property damage, regardless whether

the operator is a family member. We do not decide whether such an intentional acts exclusion is permissible under the Financial Responsibility Laws as applied to someone who is required by the Financial Responsibility Laws to be covered. Here, the language of the policy controls. Because the Financial Responsibility Laws do not require a minimum level of coverage for Shelly Thompson, a nonpermissive operator, Grinnell can exclude coverage for her intentional collision with the semi-trailer.

[¶ 16] Foltz, FBF, Continental, and the district court cite *Hughes* for the proposition that intentional acts exclusions are not enforceable because all motor vehicle liability policies must provide the minimum levels of coverage required by the Financial Responsibility Laws. *Hughes* concerned a motor vehicle liability policy that contained a "household, or family, exclusion clause" that excluded coverage for "bodily injury to any insured or any member of the family of an insured residing in the same household as the insured." *Hughes*, 236 N.W.2d at 877. We explained the "three essential elements of coverage which a 'motor vehicle liability policy' must provide, if issued pursuant to the terms of Chapter 39–16.1, N.D.C.C.":

1. Limits of liability of not less than ten thousand dollars because of bodily injury or death to one person in any one accident; twenty thousand dollars because of bodily injury or death to two or more persons in any one accident; and five thousand dollars because of injury to or destruction of property in any one accident; and

2. Insuring the named insured and any other person driving said motor vehicle with the permission of the named insured; and

3. Insuring such persons against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such insured motor vehicle within the United States of America or the Dominion of Canada. *Id.* at 883 (emphasis omitted). We stated, "[T]he terms of a motor vehicle liability policy issued and delivered in this State must provide at least the minimum coverage outlined in § 39–16.1–11. Such provisions are express declarations by the Legislature of the public policy of this State, and as such are implicit in the contract of insurance." *Id.* at 885 (citing *Wildman*, 307 P.2d 359; *Jenkins*, 380 P.2d 145). This Court held the "household, or family, exclusion clause" was not enforceable under the Financial Responsibility Laws. *Id.* at 885.

[¶ 17] Foltz, FBF, and Continental assert the three essential elements of N.D.C.C. § 39–16.1–11 must be read into Grinnell's policy. However, the three essential elements must be read together. Element 2 requires coverage for "the named insured and any other person driving said motor vehicle with the permission of the named insured." *Id.* at 883. The coverage described in Element 3 is only required for "such persons," the persons described in Element 2. *Id.* Shelly Thompson is not one of the persons described in Element 2 because she is neither the named insured nor a person driving the motor vehicle with the named insured's permission. The coverage Grinnell must provide for Shelly Thompson is controlled by the language of the policy, not the Financial Responsibility Laws. According to the terms of its policy, Grinnell is permitted to exclude coverage for Shelly Thompson's intentional act.

### III.

[¶ 18] We reverse the district court's judgment and remand to enter a judgment denying Foltz's, FBF's, and Continental's

motion for partial summary judgment and granting Grinnell's motion for summary judgment.

[¶ 19] DALE V. SANDSTROM and DANIEL J. CROTHERS, JJ., concur.

KAPSNER, Justice, concurring in the result.

[¶ 20]   I concur with the result reached by the majority.  However, I would reach that result in reliance on the intentional act exclusion of the policy.  The exclusion is express, unambiguous, and in accord with the legislative policy of this State.

[¶ 21]   The policy exclusion provides:

A.  We do not provide Liability Coverage for any "insured":

    1.  Who intentionally causes "bodily injury" or "property damage".

The Thompsons do not assert the collision was unintentional.

[¶ 22]   This Court has not directly addressed whether motor vehicle liability policies may deny coverage for intentional acts.  In *Auto. Club Ins. Co. v. Hoffert*, 195 N.W.2d 542, 545–46 (N.D.1972), the insurer argued it could deny coverage under a motor vehicle liability policy for an accident in which the insured intentionally caused the accident.  However, this Court determined the accident at issue was not intentional and therefore did not reach the issue of whether the insurer could deny coverage for intentional acts.  *Id.* at 546.

[¶ 23]   Both the dissent and the majority fail to mention two pertinent statutes.  Section 26.1–32–04, N.D.C.C., provides: "An insurer is not liable for a loss caused by the willful act of the insured...."  "This law is an express statement of public policy that an insured cannot be indemnified for losses caused by his own willful conduct."  *Cont'l Cas. Co. v. Kinsey*, 499 N.W.2d 574, 580 (N.D.1993) (dealing with professional liability insurance).  *See also*

*Hins v. Heer*, 259 N.W.2d 38, 40 (N.D. 1977) (in reference to N.D.C.C. § 26.1–32–04, stating: "[T]he North Dakota Legislature has expressly enacted into law public policy stating that an insured cannot be indemnified for losses caused by his own willful acts.") (dealing with homeowner's insurance).  In addition, N.D.C.C. § 9–08–02 states: "All contracts which have for their object, directly or indirectly, the exempting of anyone from responsibility for that person's own fraud or willful injury to the person or property of another ... whether willful or negligent, are against the policy of the law."

[¶ 24]   Together, N.D.C.C. §§ 9–08–02 and 26.1–32–04 "manifest a public policy of discouraging persons from committing fraud or other willful acts that cause injury to others."  *Cont'l Cas. Co.*, 499 N.W.2d at 581.  *Accord Capitol Indem. Corp. v. Evolution, Inc.*, 293 F.Supp.2d 1067, 1074 (D.N.D.2003) (under North Dakota law, "public policy precludes an insured from being indemnified for losses caused by the insured's intentional or willful conduct") (citing N.D.C.C. §§ 9–08–02, 26.1–32–04).  "These statutes foster that public policy by prohibiting contracts which would exempt a person from being held responsible for the consequences of his wrongful intentional conduct (Section 9–08–02, N.D.C.C.) and by precluding insurers from indemnifying insureds for losses caused by the insured's willful acts (Section 26.1–32–04, N.D.C.C.)."  *Cont'l Cas. Co.*, at 581.  *See also Haser v. Maryland Cas. Co.*, 78 N.D. 893, 53 N.W.2d 508, 512 (1952) (holding automobile liability insurance policy does not cover taxicab driver who raped a passenger because public policy does not allow a person "to insure against liability arising directly against the insured from his willful wrong").

[¶ 25]   The dissent argues N.D.C.C. § 39–16.1–11(2)(b) requires motor vehicle

liability policies cover intentional acts because the statute states such policies must insure against loss from liability "arising out of the ownership, maintenance, or *use* of such motor vehicles...." (Emphasis added). Because "use" covers both intentional and inadvertent accidents, the dissent argues, the financial responsibility laws prohibit Grinnell Mutual from denying coverage for intentional acts. In addition, the dissent claims in passing the financial responsibility laws, the Legislature intended to protect the innocent victims of motor vehicle accidents. As support, the dissent quotes *Hughes v. State Farm Mut. Auto. Ins. Co.,* 236 N.W.2d 870, 882 (N.D. 1975), which states: "The basic purpose for the Legislature's enactment of financial responsibility laws was to protect innocent victims of motor vehicle accidents from financial disaster." In *Hughes*, at 882, this Court cited page 93 of the 1967 *Report of the North Dakota Legislative Research Committee,* which stated: "Financial responsibility laws have as their objective the compensation of innocent victims of traffic accidents. Thus, they are more concerned with the solution of economic problems created by traffic accidents than with the prevention of traffic accidents."[1]

[¶ 26] The report prepared by the legislative research committee does not make any additional reference to innocent victims. Further, the two sentences in a report do not negate the express provisions of the statute itself. The financial responsibility laws provide a vehicle owner's "policy of liability insurance" must:

insure the person named therein and any other person, as insured, *using such*

*motor vehicle or motor vehicles with the express or implied permission of such named insured,* against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicles....

N.D.C.C. § 39–16.1–11(2)(b). (Emphasis added). By the express statutory language not all "use" is covered, only use with the express or implied permission of the named insured is covered.

[¶ 27] While it is undoubtedly true the financial responsibility laws exist to protect innocent victims, it is also manifestly clear they were not intended to protect *all* innocent victims. Some, but not all. Innocent victims who are injured, even killed, by drivers who are driving without permission, are expressly excluded from the protections of N.D.C.C. § 39–16.1–11(2)(b). Thus, the dissent's theory of the legislative intent in enacting this statute is overstated. In light of N.D.C.C. § 26.1–32–04, is it so incongruous to say that the person who uses a vehicle to intentionally inflict injury or damage will receive no greater coverage than the person who uses a vehicle without permission?

[¶ 28] Other than a single sentence in a legislative report, the dissent quotes no other legislative history to support the dissent's sweeping statement of legislative policy and I have found none. That single statement must be weighed against the express language of a statute which authorizes the intentional act exclusion:

*Willful act exonerates insurer, negligence does not.* An insurer is not liable for a loss caused by the willful act of the

---

1. The single statement quoted by the dissent is not part of a broad policy statement actually made by the Legislature but rather part of a short explanation of why the legislative research committee was recommending to the Legislature dividing "chapter 39–16 of the North Dakota Century Code in two so that the

laws relating to the requirements for establishing proof of financial responsibility for the future, and for establishing security following an accident are no longer commingled." *Report of the North Dakota Legislative Research Committee* 94 (1967).

insured, but the insurer is not exonerated by the negligence of the insured or of the insured's agents or others.

N.D.C.C. § 26.1–32–04.

[¶ 29] I acknowledge that other courts have interpreted their financial responsibility laws to cover intentional acts. However, the dissent fails to note that some jurisdictions, although a minority, have held insurers may exclude intentional acts. *See State Farm Mut. Auto. Ins. Co. v. Wertz*, 540 N.W.2d 636, 639–40 (S.D.1995) (holding public policy precludes insurance coverage for intentional acts despite financial responsibility laws requiring coverage for damages caused by "accidents . . . arising out of the ownership, maintenance, or use of a vehicle . . ."); *Williams v. Diggs*, 593 So.2d 385, 387 (La.Ct.App.1991) (holding motor vehicle insurer could deny coverage for intentional acts despite statute requiring insurance for damages arising out of the ownership, maintenance, or use of the vehicle "in view of the strong policy against allowing persons to insure themselves against liability for injuries they intentionally inflict"); *Utica Mut. Ins. Co. v. Travelers Indem. Co.*, 223 Va. 145, 286 S.E.2d 225, 226 (1982) (holding motor vehicle insurer was not required to provide coverage for injuries caused by an intentional act because Virginia law only requires coverage for losses "caused by accident"); and *Snyder v. Nelson*, 278 Or. 409, 564 P.2d 681, 684 (1977) (holding motor vehicle liability insurer could deny coverage for intentional acts despite statute requiring coverage for "accidents . . . arising out of the ownership, operation, maintenance or use of a vehicle" because "it is against public policy for a tortfeasor to insure against liability for intentionally inflicted injury or damage").

[¶ 30] If I were a legislator, I might be persuaded the policy the dissent would announce is a good policy, but in light of N.D.C.C. § 26.1–32–04, until our legislative assembly articulates that policy, I am bound by the plain language of our statutes.

[¶ 31] Section 26.1–32–04, N.D.C.C., provides: "An insurer is not liable for a loss caused by the willful act of the insured. . . ." Section 39–16.1–11(2)(b), N.D.C.C., states motor vehicle liability policies must "insure . . . against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicles. . . ." As N.D.C.C. § 39–16.1–11(2)(b) does not distinguish between intentional and inadvertent acts, while N.D.C.C. § 26.1–32–04 explicitly provides an insurer is not liable for loss caused by willful acts, this Court can give effect to both statutes by holding motor vehicle liability policies may deny coverage for intentional acts.

[¶ 32] The intentional act exclusion of the Grinnell policy does not violate the legislative policy of this State. I, therefore, concur in the result reached by the majority.

[¶ 33] CAROL RONNING KAPSNER

MARING, Justice, dissenting.

[¶ 34] I respectfully dissent from the majority opinion. I would affirm the judgment of the trial court.

[¶ 35] The majority, without one citation, has reversed the decision of the trial court even though the trial court's decision follows the majority of jurisdictions in this country that have addressed the issue presented. *See Dotts v. Taressa J.A.*, 182 W.Va. 586, 390 S.E.2d 568, 572 (1990); Johnny Parker, *The Wacky World of Collision and Comprehensive Coverages: Intentional Injury and Illegal Activity Exclusions*, 79 Neb. L.Rev. 75, 96 n. 76 (2000). Not even Grinnell advocates the reasoning used by the majority opinion.

Grinnell argues the intentional acts exclusion is valid against all "insureds." The majority imposes its own notion of public policy, and in doing so, refuses to acknowledge the public policy enunciated by our legislature in enacting the North Dakota Financial Responsibility Laws. The result of the majority opinion is the potential for one class of "insureds" under the mandated liability coverage to be insured for intentional acts and another class of "insureds" under the same mandatory coverage to be excluded for intentional acts without any policy language requiring such a distinction.

[¶ 36] The Financial Responsibility Laws in North Dakota provide that all motor vehicle liability policies, which means all owner's or operator's policies of liability insurance "[m]ust insure the person named therein and any other person, as insured, using such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicles...." N.D.C.C. § 39–16.1–11(2)(b). Our Court has interpreted this language and concluded that a policy of insurance must contain the same omnibus coverage defined by the Financial Responsibility Laws. *Hughes v. State Farm Mut. Auto. Ins. Co.*, 236 N.W.2d 870, 884 (N.D.1975). We have said that the mandatory omnibus clause coverage is a clear legislative expression of public policy. *Id.*

[¶ 37] The first step of the analysis is to determine whether the Grinnell policy contains the coverage mandated by the Financial Responsibility Laws. The policy language is different from the statutory language. "Part A—Liability Coverage" of the policy states:

    A. *We will pay damages for "bodily injury" or "property damage" for*

*which any "insured" becomes legally responsible because of an auto accident.* Damages include prejudgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

(Emphasis added.) Under N.D.C.C. § 39–16.1–11(2)(b):

    2.  Such owner's policy of liability insurance ...

        b.  Must insure the person named therein and any other person, as insured, using such motor vehicle or motor vehicles with the express or implied permission of such named insured, *against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicles* ....

(Emphasis added.) By the terms of the policy's conformity clause, the policy is conformed to comply with the state's Financial Responsibility Laws. *Richard v. Fliflet*, 370 N.W.2d 528, 535 (N.D.1985). "The Financial Responsibility Act is read into, and forms part of, a policy of insurance required thereby." Lee R. Russ, Thomas F. Segalla, *Couch on Insurance* § 109:59 (3d ed. 2005). The Grinnell policy must therefore be modified to read:

    A.  We will pay for loss from the liability imposed by law on any "insured" for damages arising out of the owner-

ship, maintenance, or use of such motor vehicles.

[¶ 38] Once the policy complies with the statutory coverage, we look to the policy to determine who is an "insured." The majority correctly concludes that Shelly Thompson is an "insured." The Grinnell policy "Part A–Liability Coverage" defines an "insured" to include the named insured's "family member" and thus Norman Thompson's spouse, Shelly Thompson.

[¶ 39] Grinnell argues that Shelly Thompson was not a permissive user and therefore she has no mandatory liability coverage. However, if we look to the terms of the policy, we find that Grinnell extended the mandatory liability coverage to a "family member" using the named insured's auto even if without permission. The policy under "Part A—Liability Coverage" "Exclusions" states:

A. We do not provide Liability Coverage for any "insured":

. . . .

8. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (A.8) does not apply to a "family member" using "your covered auto" which is owned by you.

Our Court has held that an auto policy can provide broader coverage than required by our statutes. See DeCoteau v. Nodak Mutual Ins. Co., 2000 ND 3, ¶ 22, 603 N.W.2d 906; Grinnell Mutual Reinsurance Co., v. Farm & City Ins. Co., 2000 ND 163, ¶¶ 15–16, 616 N.W.2d 353 (holding that the statute required coverage if a person is using the vehicle with the express or implied permission of the named insured, but the policy provided broader coverage by providing coverage if a person uses the vehicle with sufficient reason to believe that the use is with permission). The majority is correct that our statutes do not mandate liability coverage for a nonpermissive user, but in this case, Grinnell's policy specifically excepted Shelly Thompson from its exclusion from liability coverage and covered Shelly Thompson as a nonpermissive user.

[¶ 40] Shelly Thompson is clearly an insured under the Grinnell liability policy even if she did not have permission to drive the motor vehicle. This risk was covered by the mandatory liability policy from the day it was issued. Our Financial Responsibility Laws only mandate liability coverage for an insured who uses the motor vehicle with the express or implied permission of the named insured, but the Grinnell Mutual policy provided broader coverage by excepting a "family member" from the exclusion of nonpermissive users.

[¶ 41] The only other exclusion in the policy that applies to Shelly Thompson is found in "Part A—Liability Coverage" "Exclusions":

A. We do not provide Liability Coverage for any "insured":

1. Who intentionally causes "bodily injury" or "property damage".

Whether the policy's intentional acts exclusion is valid in light of North Dakota's comprehensive Financial Responsibility Laws is the issue briefed to the trial court and to this Court. The majority concludes it may not be valid for insureds who are permissive users, but valid for Shelly Thompson because she was a nonpermissive user. The majority refuses to examine the issue briefed and dismisses it by stating, at ¶ 15: "Because Grinnell provides greater coverage in one area, it is not required to provide greater coverage than is required by the Financial Responsibility Laws under all circumstances." The majority provides no support for this analysis. The majority, at ¶ 15, further announces without any support: "Because

the Financial Responsibility Laws do not require a minimum level of coverage for Shelly Thompson, a nonpermissive operator, Grinnell can exclude coverage for her intentional collision with the semi-trailer." This analysis is flawed and result-oriented. The coverage mandated by our laws was provided to Shelly Thompson in this case by the Grinnell policy. The policy excludes coverage for "any 'insured' . . . [w]ho intentionally causes 'bodily injury' ". Whether Shelly Thompson was a permissive user or not has nothing to do with the issue of whether the intentional acts exclusion of the Grinnell policy is valid or not for "any insured." Shelly Thompson is "any insured" under the mandatory liability coverage of the Grinnell policy. The Grinnell policy provided coverage for a nonpermissive family member user under its mandatory liability coverage. Under the intentional acts exclusion, it did not distinguish between an insured who was a permissive user or nonpermissive user. It granted Shelly Thompson the full status of an "insured" under the mandatory liability coverage.

[¶ 42] The well-reasoned analysis of the Supreme Court of Utah addressing this issue is persuasive. *See Speros v. Fricke*, 2004 UT 69, 98 P.3d 28. In concluding as a matter of law that the intentional acts exclusion in a motor vehicle policy was invalid, the Court reviewed the legislative intent behind its motor vehicle liability coverage laws and stated:

> The Utah legislature has enacted a comprehensive statutory scheme mandating minimum liability coverage for motor vehicles. This legislative enactment reflects a public policy requiring vehicle owners to carry a minimum level of liability coverage to protect innocent victims of automobile accidents.

*Id.* at ¶ 42 (citation omitted). Our Court has said: "The basic purpose for the Legislature's enactment of financial responsibility laws was to protect innocent victims of motor vehicle accidents from financial disaster." *Hughes*, 236 N.W.2d at 882.[2] The Utah statute requires that the policy insure "against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of these motor vehicles . . ." *Speros*, at ¶ 42 (emphasis omitted). The language of our North Dakota statute reads the same. N.D.C.C. § 39–16.1–11(2)(b). The Utah Supreme Court stated:

> The statute recognizes no distinction between liability arising out of negligent acts and liability arising out of intentional acts; it simply requires coverage for all liabilities imposed by law. Because the law imposes liability for damages caused negligently and intentionally, we conclude that the statute requires coverage of liability arising out of intentional, as well as negligent acts.

*Speros*, at ¶ 43 (emphasis omitted). *See also* Lee R. Russ, Thomas F. Segalla, *Couch on Insurance* § 109:65 (3d ed. 2005)

2. The concurrence in the result claims that my dissent has overstated the basic purpose of the financial responsibility laws. However, my position is simply that our laws mandate coverage for all owners of automobiles plus persons whom they permit to drive their automobiles. This is for the protection of innocent victims harmed by the actions of these drivers. Therefore, it is against public policy to exclude from coverage intentional acts of these owners and drivers. I see no reason

not to apply this policy to any insured to whom the mandatory coverage extends.

The concurrence further states that I have made a sweeping statement of legislative policy, but I have only quoted our Court's majority holding in *Hughes*, which has been law since 1975. *See Kambeitz v. Acuity Ins. Co.*, 2009 ND 166, ¶ 14, 772 N.W.2d 632; *State Farm Mutual Automobile Ins. Co. v. LaRoque*, 486 N.W.2d 235, 239–41 (N.D.1992); *Richard v. Fliflet*, 370 N.W.2d 528, 534 (N.D.1985).

("The coverage of a Financial Responsibility Act is not limited to harm from negligent operation, but includes harm resulting from willful misconduct, and it is not against public policy to so provide as the Financial Responsibility Law is itself a declaratory of public policy and supersedes any rule of public policy applicable to ordinary insurance law.") The Utah Supreme Court recognized that "[o]ther courts have reached the same conclusion when analyzing similar statutory language." *Speros*, at ¶ 43 n. 6. *See, e.g., State Farm Fire & Cas. Co. v. Tringali*, 686 F.2d 821, 824 (9th Cir.1982); *Wheeler v. O'Connell*, 297 Mass. 549, 9 N.E.2d 544, 546 (1937); *Nationwide Mut. Ins. Co. v. Roberts*, 261 N.C. 285, 134 S.E.2d 654, 659 (1964); *S.C. Farm Bureau Mut. Ins. Co. v. Mumford*, 299 S.C. 14, 382 S.E.2d 11, 12–14 (S.C.Ct.App.1989); *accord Hudson v. State Farm Mut. Ins. Co.*, 569 A.2d 1168, 1169 (Del.1990); *Martin v. Chicago Ins. Co.*, 184 Ga.App. 472, 361 S.E.2d 835, 837 (1987); *Mosley v. West Am. Ins. Co.*, 743 S.W.2d 854, 855 (Ky.Ct. App.1987); *Cannon v. Commerce Ins. Co.*, 18 Mass.App.Ct. 984, 470 N.E.2d 805, 806 (1984); *Hartford Accident & Indem. Co. v. Wolbarst*, 95 N.H. 40, 57 A.2d 151, 153–55 (1948); *Dotts v. Taressa J.A.*, 182 W.Va. 586, 390 S.E.2d 568, 572–74 (1990); *cf. Cotton States Mut. Ins. Co. v. Neese*, 254 Ga. 335, 329 S.E.2d 136, 138–42 (1985) (determining that an insurance provision that excluded coverage for a person attempting to avoid apprehension or arrest was unenforceable as a matter of public policy to the extent of insurance required under Georgia's compulsory insurance law).

[¶ 43] The Utah Supreme Court examined the statutory scheme and concluded it supported the Court's decision because it contemplates some exclusions from coverage but does not authorize exclusions from coverage for the intentional acts of otherwise covered persons. The North Dakota law has the same statutory exclusions mentioned by the Utah Supreme Court. The Supreme Court of Appeals of West Virginia, noting that its statute specified certain exceptions to coverage, concluded that under the doctrine of " 'expressio unius est exclusio alterius' (express mention of one thing implies exclusion of all others)," the legislature did not intend to exclude coverage for intentional acts. *Dotts*, 390 S.E.2d at 573. Our statute, N.D.C.C. § 39–16.1–11(5), recognizes policies need not insure any liability arising under workforce safety and insurance law, liability on a count of bodily injury to an employee of the insured while engaged in the employment of the insured, while engaged in the operation, maintenance, or repair of a motor vehicle, nor any liability for the damage to property owned by, rented to, in charge of, or transported by the insured.

[¶ 44] In addition, our past case law supports the invalidation of the intentional acts exclusion in light of the purpose of our Financial Responsibility Laws. In *Richard v. Fliflet*, our Court held an auto policy cannot be voided because of a misrepresentation of the insured in obtaining the coverage after the occurrence of the accident. 370 N.W.2d 528, 530 (N.D.1985). Under N.D.C.C. § 39–16.1–11(6)(a), "[t]he liability of the insurance carrier with respect to the insurance required by this chapter becomes absolute whenever injury or damage covered by said motor vehicle liability policy occurs." *See Kambeitz v. Acuity Ins. Co.*, 2009 ND 166, ¶ 14, 772 N.W.2d 632. Under *Hughes*, our Court held the terms of a motor vehicle liability policy issued and delivered in North Dakota must provide at least the minimum coverage under our Financial Responsibility Laws, and the household or family exclusion clause was void as violative of public policy. *Hughes*, 236 N.W.2d at 885.

[¶ 45] The Supreme Court of Utah noted that many jurisdictions "'interpret their mandatory insurance statutes to require liability insurance subject only to specific statutory exclusions and construe the legislative policy to require minimum coverage to victims of automobile accidents.'" *Speros*, 2004 UT 69, ¶ 46, 98 P.3d 28 (quoting *Farmers Ins. Exchange v. Call*, 712 P.2d 231, 234 (Utah 1985)).

[¶ 46] It is true that our Court has upheld an intentional acts exclusion in the context of a homeowner's policy and others, but those cases are clearly distinguishable because there is no statutory scheme requiring minimum coverage. *See Mead v. Farmers Union Mut. Ins. Co.*, 2000 ND 139, ¶¶ 7, 22, 613 N.W.2d 512 (holding the trial court did not err in determining a farm liability policy's exclusion for intentional acts was valid); *Ohio Cas. Ins. Co. v. Horner*, 1998 ND 168, ¶¶ 1–2, 583 N.W.2d 804 (affirming a determination that the intentional acts exclusion applied to a homeowner's policy); *Ohio Cas. Ins. Co. v. Clark*, 1998 ND 153, ¶ 18, 583 N.W.2d 377 (holding a homeowner's policy validly excluded coverage for an intentional act); *Nodak Mut. Ins. Co. v. Heim*, 1997 ND 36, ¶ 24, 559 N.W.2d 846 (determining a farm policy's intentional acts exclusion barred coverage); *Nat'l Farmers Union Property & Cas. Co. v. Kovash*, 452 N.W.2d 307, 311 (N.D.1990) (holding a farm liability policy did not cover an intentional trespass under its intentional acts exclusion); *Hins v. Heer*, 259 N.W.2d 38, 40 (N.D.1977) (holding the homeowner's policy excluded willful acts) [3]; *see also Allstate Indemnity Co. v. Wise*, 818 So.2d 524, 526 (Fla.Dist.Ct. App.2001) (distinguishing an automobile liability policy exclusion from a homeowner's liability exclusion because under the Financial Responsibility Laws, Florida enforces minimum levels of automobile insurance to protect the public). The intentional acts exclusion in the Grinnell liability policy is contrary to our statutory scheme and the intent of our legislature to protect innocent victims of motor vehicle accidents. If our legislature is of the view that the mandatory liability coverage should not provide coverage to innocent victims when the tortfeasor acts intentionally, it can amend the statute to add the exclusion just as it has limited coverage for other circumstances. *See* N.D.C.C. § 39–16.1–11(5).

[¶ 47] I also agree with the Utah Supreme Court that:

> "The principle that one should not be permitted to insure against his own intentional wrongdoing applies to *voluntary insurance, not compulsory insurance.* Where the Legislature makes coverage compulsory, instead of leaving it to the voluntary market, it has already balanced the public interest in prohibiting insurance for intentionally harmful acts against the public interest in compensating the victims of at fault motorists. By making coverage compulsory, it chooses to weigh the latter interest more heavily than the former. *Once the Legislature has made that choice, there is no room for the courts to impose a different judgment based on their own notions of public policy.*"

*Speros*, 2004 UT 69, ¶ 46 n. 9, 98 P.3d 28 (quoting *Mumford*, 299 S.C. 14, 382 S.E.2d 11, 14 (S.C.Ct.App.1989) (emphasis added)).

---

**3.** The concurrence states that my dissent fails to mention two pertinent statutes, N.D.C.C. §§ 26.1–32–04 and 9–08–02. Yet, a reading of the foregoing cases reveals discussion of these statutes in the analyses of the opinions of our Court. Section 26.1–32–04, N.D.C.C. is a general statute relating to insurance and any public policy therein must be considered against the specific public policy behind the enactment of the financial responsibility laws.

[¶ 48] Grinnell argues that the collision in this case is not an "accident" and that the North Dakota Financial Responsibility Laws only apply to "accidents" because the mandatory minimum limits of liability coverage are set out under N.D.C.C. § 39–16.1–11(2)(b) as "in any one accident." The Financial Responsibility Laws do not define "accident," and the Grinnell policy does not define "accident." Grinnell argues the term does not include intentional acts. However, our Court construes statutes as a whole to determine the intent of the legislature. *Rojas v. Workforce Safety and Ins.*, 2006 ND 221, ¶ 13, 723 N.W.2d 403. We construe statutes giving consideration to the context and the purpose for which they were enacted. *Bragg v. Burlington Resources Oil & Gas Co.*, 2009 ND 33, ¶ 18, 763 N.W.2d 481. An examination of the statutory language reveals that coverage is not limited to losses that are caused by "accident," but rather coverage is mandated for "loss[es] from the liability imposed by law for damages arising out of ownership, maintenance, or use of such motor vehicles...." N.D.C.C. § 39–16.1–11(2)(b). As pointed out before, a majority of jurisdictions examining this language have concluded that the coverage mandated by the Financial Responsibility Laws is not limited to harm from negligent acts, but includes harm from intentional acts. It is clear that the term "accident" in this context is utilized only as a means of describing the minimum coverage requirement for any single auto collision. *See Dotts*, 390 S.E.2d at 573; *Mumford*, 382 S.E.2d at 14. In further support of this interpretation is the public policy and interest declared by our legislature in having innocent victims of automobile collisions compensated for their injuries. Although the insurer, Grinnell, will pay the damages assessed against Shelly Thompson, it can seek indemnification from her. *See Continental Casualty Co. v. Kinsey*, 499 N.W.2d 574, 581 (N.D.1993). When the insured is denied coverage under an intentional acts exclusion, the risk of loss is shifted to the innocent victim.

[¶ 49] In consideration of the clear statutory language mandating coverage "against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use" of a motor vehicle, the public policy requiring minimum coverage to protect innocent victims of automobile accidents, and the legislature's failure to authorize such intentional acts exclusion, I would hold the intentional acts exclusion is unenforceable against innocent victims up to the minimum liability limits prescribed by the Financial Responsibility Laws and affirm the judgment of the trial court.

[¶ 50] MARY MUEHLEN MARING